1   HANSON BRIDGETT MARCUS VLAHOS & RUDY, LLP
    WILLIAM D. TAYLOR (SBN 51689)
2   JAMES T. CAHALAN (SBN 166961)
    980 Ninth Street, Suite 1500
3   Sacramento, CA 95814
    Telephone:   (916) 442-3333
4   Facsimile:    (916) 442-2348
    jcahalan@hansonbridgett.com
5
    Attorneys for Plaintiff
6   ATLAS DISPOSAL INDUSTRIES, LLC

7

8                    UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  ATLAS DISPOSAL INDUSTRIES, LLC,        No. 05CV989 MCE KJM

12              Plaintiff,                 **DECLARATION OF JAMES T. CAHALAN
                                           IN SUPPORT OF PLAINTIFF'S RULE 56
13       v.                                MOTION FOR PARTIAL SUMMARY
                                           JUDGMENT**
14  BFI WASTE SYSTEMS OF NORTH
    AMERICA, INC.,                         Hearing Date:   June 19, 2006
15                                         Judge:          Hon. Morrison C. England, Jr.
                Defendant.                 Trial Date:     None set
16

17

18          I, James T. Cahalan, declare as follows:

19          1.      I am an attorney licensed to practice before the courts of the State of California

20  and the United States District Court, Eastern District, and am employed as an attorney with the

21  law offices of Hanson, Bridgett, Marcus, Vlahos & Rudy, LLP, attorneys of record for Plaintiff

22  Atlas Disposal Industries LLC ("Atlas").  I have personal knowledge of the matters set forth in

23  this declaration and, if called as a witness, I could and would testify competently as to these facts.

24          2.      On March 18, 2005, Atlas filed suit against BFI in Sacramento County Superior

25  Court, alleging a single count of breach of contract for the second and third years of the DSA (the

26  "Present Action").  For the Court's convenience, a true and correct copy of the Complaint filed by

27  Atlas in the present action is attached hereto as Exhibit A.  The damages sought by Atlas in the

28  Present Action are limited to the lost tipping fees, calculated as the shortfall in tonnage delivered

1    by BFI during the second and third years times the tipping fees applicable to the second and third

2    years ($33.48 per ton and $34.48 per ton, respectively, pursuant to the DSA ).  Unlike in the

3    Initial Action, Atlas is not seeking any lost profits from processing operations.  The state court

4    action was removed to this Court on May 18, 2005.

5         3.     For the Court's convenience, a true and correct copy of the Answer filed by

6    Defendant BFI Waste Systems of North America, Inc. ("BFI") in the present action is attached

7    hereto as Exhibit B.

8         4.     A true and correct copy of BFI's Responses to Plaintiff's Special Interrogatories

9    (Set One) to Defendant, dated March 10, 2006, is attached hereto as Exhibit C.

10        5.     A true and correct copy of BFI's Responses to Plaintiff's Requests for Admissions

11   (Set One) to Defendant, dated March 10, 2006, is attached hereto as Exhibit D.

12        I declare under penalty of perjury under the laws of the State of California and the United

13   States of America that the foregoing is true and correct and that this Declaration was executed

14   this 19th day of May, 2006, at Sacramento, California.

15

16

17

18   James T. Cahalan

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A
## to
# Declaration of James T. Cahalan

982.1(20)

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address):*
William D. Taylor, State Bar No: 51689
JAMES T. CAHALAN, State Bar No.: 166961
HANSON BRIDGETT MARCUS VLAHOS RUDY, LLP
980 Ninth Street, Suite 1500
Sacramento, California  95814
TELEPHONE NO: 916-442-3333    FAX NO. *(Optional):* 916-442-2348
-MAIL ADDRESS *(Optional):*
ATTORNEY FOR *(Name):* ATLAS DISPOSAL INDUSTRIES, LLC

FOR COURT USE ONLY

FILED
ENDORSED

05 MAR 18 PM 3: 55

LEGAL PROCESS #1

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** SACRAMENTO
STREET ADDRESS: 720 NINTH STREET
MAILING ADDRESS: 720 NINTH STREET
CITY AND ZIP CODE: SACRAMENTO, CA  95814
BRANCH NAME:

PLAINTIFF: ATLAS DISPOSAL INDUSTRIES, a Utah limited liability company
DEFENDANT: BFI Waste Systems of Northern California, Inc., a Delaware Corporation
[ X ] DOES 1 TO 20

## CONTRACT

[ X ] **COMPLAINT**          [ ] **AMENDED COMPLAINT** *(Number):*
[ ] **CROSS-COMPLAINT** [ ] **AMENDED CROSS-COMPLAINT** *(Number):*

**Jurisdiction** *(check all that apply):*
[ ] **ACTION IS A LIMITED CIVIL CASE**
    Amount demanded  [ ] does not exceed $10,000
                     [ ] exceeds $10,000, but does not exceed $25,000
[ X ] **ACTION IS AN UNLIMITED CIVIL CASE (exceeds $25,000)**
[ ] **ACTION IS RECLASSIFIED** by this amended complaint or cross-complaint
    [ ] from limited to unlimited
    [ ] from unlimited to limited

CASE NUMBER:

**05AS01213**

PLAINTIFF* *(names):* ATLAS DISPOSAL INDUSTRIES, a Utah limited liability company

alleges causes of action against DEFENDANT* *(names):* BFI WASTE SYSTEMS OF NORTH AMERICA, INC., a Delaware corporation

This pleading, including attachments and exhibits, consists of the following number of pages:
a. Each plaintiff named above is a competent adult
   [ X ] **except** plaintiff *(name):* ATLAS DISPOSAL INDUSTRIES, LLC

       [ ] a corporation qualified to do business in California
       [ X ] an unincorporated entity *(describe):* Utah limited liability company
       [ ] other *(specify):*

b. [ X ] Plaintiff *(name):* ATLAS DISPOSAL INDUSTRIES, LLC
      [ X ] has complied with the fictitious business name laws and is doing business under the fictitious name of *(specify):*
          ATLAS DISPOSAL INDUSTRIES, LLC
      [ ] has complied with all licensing requirements as a licensed *(specify):*

c. [ ] Information about additional plaintiffs who are not competent adults is shown in Complaint—Attachment 3c.

a. Each defendant named above is a natural person
   [ X ] **except** defendant *(name):* BFI WASTE SYSTEMS, of North America, Inc.
       [ ] a business organization, form unknown
       [ X ] a corporation
       [ ] an unincorporated entity *(describe):*

       [ ] a public entity *(describe):*

       [ ] other *(specify):*

   [ ] **except** defendant *(name):*
       [ ] a business organization, form unknown
       [ ] a corporation
       [ ] an unincorporated entity *(describe):*

       [ ] a public entity *(describe):*

       [ ] other *(specify):*

This form is used as a cross-complaint, plaintiff means cross-complainant and defendant means cross-defendant.
Form Approved for Optional Use
Judicial Council of California
982.1(20) [Rev. July 1, 2002]

**COMPLAINT—Contract**

Legal
Solutions
Plus

Code of Civ. Proc., § 425.12

| SHORT TITLE: ATLAS V BFI | CASE NUMBER: |
|---|---|

## COMPLAINT—Contract

4.  *(Continued)*
    b.  The true names and capacities of defendants sued as Does are unknown to plaintiff.
    c.  ☐ Information about additional defendants who are not natural persons is contained in Complaint—Attachment 4c.
    d.  ☐ Defendants who are joined pursuant to Code of Civil Procedure section 382 are *(names):*

5.  ☐ Plaintiff is required to comply with a claims statute, **and**
    a.  ☐ plaintiff has complied with applicable claims statutes, or
    b.  ☐ plaintiff is excused from complying because *(specify):*

6.  ☐ This action is subject to   ☐ Civil Code section 1812.10   ☐ Civil Code section 2984.4.

7.  This court is the proper court because
    a.  ☒ a defendant entered into the contract here.
    b.  ☐ a defendant lived here when the contract was entered into.
    c.  ☐ a defendant lives here now.
    d.  ☒ the contract was to be performed here.
    e.  ☐ a defendant is a corporation or unincorporated association and its principal place of business is here.
    f.  ☐ real property that is the subject of this action is located here.
    g.  ☒ other *(specify):*  Fraud

8.  The following causes of action are attached and the statements above apply to each *(each complaint must have one or more causes of action attached):*
    ☒ Breach of Contract        ☐ Common Counts
    ☐ Other *(specify):*

9.  ☐ Other:

10. **PLAINTIFF PRAYS** for judgment for costs of suit; for such relief as is fair, just, and equitable; and for
    a.  ☒ damages of: $ 1,472,224.00
    b.  ☒ interest on the damages
        (1) ☐ according to proof
        (2) ☐ at the rate of              percent per year from *(date):*
    c.  ☒ attorney fees
        (1) ☐ of: $
        (2) ☒ according to proof.
    d.  ☒ other *(specify):*
        All other relief the court determines are fair, just and equitable.

11. ☐ The following paragraphs of this pleading are alleged on information and belief *(specify paragraph numbers):*

Date:

William D. Taylor, State Bar No: 51689
(TYPE OR PRINT NAME)

▶ *William D. Taylor* (SIGNATURE OF PLAINTIFF OR ATTORNEY)

*(If you wish to verify this pleading, affix a verification.)*

| SHORT TITLE: ATLAS v. BFI | CASE NUMBER: |
|---|---|

___FIRST___    **CAUSE OF ACTION - Breach of Contract**    Page __3__
(number)

ATTACHMENT TO  [X] Complaint  ☐ Cross-Complaint

*(Use a separate cause of action form for each cause of action.)*

BC-1. Plaintiff *(name):* ATLAS DISPOSAL INDUSTRIES, LLC a Utah limited liability company
   alleges that on or about *(date):* 3/19/99
   a [X] written  ☐ oral  ☐ other *(specify):*
   agreement was made between *(name parties to agreement):* ATLAS DISPOSAL INDUSTRIES AND BFI WASTE SYSTEMS OF NORTH AMERICA, INC.
   [X] A copy of the agreement is attached as Exhibit A, **or**
   ☐ The essential terms of the agreement [X] are stated in Attachment BC-1 ☐ are as follows *(specify):*

   SEE ATTACHMENT BC-1

BC-2. On or about *(dates):* March 19, 2001 and March 19, 2002
   defendant breached the agreement by  ☐ the acts specified in Attachment BC-2  [x] the following acts
   *(specify):* Defendant refuses and failed to deliver recyclable materials during Years 2 and 3 of the contract as provided for in said contract.

BC-3. Plaintiff has performed all obligations to defendant except those obligations plaintiff was prevented or excused from performing.

BC-4. Plaintiff suffered damages legally (proximately) caused by defendant's breach of the agreement
   ☐ as stated in Attachment BC-4  [X] as follows *(specify):* IN THE AMOUNT OF $1,472,224.00 AS SET FORTH IN THE DEMAND LETTER ATTACHED HEREWITH AS EXHIBIT "B"

BC-5. [X] Plaintiff is entitled to attorney fees by an agreement or a statute
   ☐ of $
   [X] according to proof.

BC-6. ☐ Other:

## ATTACHMENT

**BC - 1**

1. On or about March 19, 1999, in Sacramento County, California, the Plaintiff and Defendant entered into a written agreement wherein Plaintiff agreed to accept from Defendant source separated and commingled recyclables for processing. Defendant agreed to deliver said materials to Plaintiff in the quantity and of the quality, at the price and upon the terms and conditions set forth in the contract attached hereto as Exhibit A.

2. In accordance with the terms of said contract, Defendant was to deliver not less than 26,000 tons of recyclable materials and not more than 65,000 tons of recyclable materials during the each year of the contract, beginning with the date of the agreement. In exchange for Plaintiff processing the recyclable materials, Defendant agreed to pay Plaintiff $32.50 per ton of such materials. Excepted from the flat $32.50 per ton flat rate were particular recyclable materials, including clean wood waste, green waste, residential and commercial commingled recyclables and other source separated recyclable materials, and contaminated tonnage.

3. In the first year of the contract, the Defendant breached the agreement of the contract by failing to deliver the volume of recyclable materials provided for in the agreement in said contract. As a result, Plaintiff sued Defendant in an action entitled *Atlas Disposable Industries, LLC v. BFI Waste Systems of North America, Inc.*, Case No. 00AS03373, Superior Court of California, County of Sacramento (the "Action"). In this action, the trial court found that Defendant had breached the agreement with respect to the first year thereof and awarded Plaintiff damages in the amount of $316,192.50, together with pre-judgment interest at the legal rate commencing March 19, 2000. In addition, Defendant was ordered to pay Plaintiff attorney fees in accordance with California Rules of Court, Rule 870.2. The judgment of the Superior Court was ultimately affirmed by the Court of Appeals of the State of California, Third Appellate District (Sacramento), in *Atlas Disposal Industries, LLC v. BFI Waste Systems of North America, Inc.*, Case No. C042391 attached hereto as Exhibit B.

4. This Complaint relates to Years 2 and 3 of the subject contract during which Defendant has failed and refused to deliver to Plaintiff the minimal amount of tonnage of recyclable materials as provided in the contract for Years 2 and 3 thereof (ending March 19, 2001, and March 19, 2002, respectively), although Plaintiff was ready, willing and able to process the requirements of the contract.

5. Based upon the earlier decisions with respect to Year 1 of the contract, Plaintiff has calculated damages for Year 2 to be $575,770.00 and for Year 3 to be $896,454.00 for a total of $1,472,224.00, together with interest and attorneys fees.

28203.1

# EXHIBIT A
# to Complaint

# DISPOSAL SERVICES AGREEMENT

This agreement made as of March 19, 1999 between Atlas Disposal Industries, a Utah Limited Liability Company located in Sacramento, California, hereinafter referred to a "Processor" and BFI Waste Systems of North America, Inc., a Delaware Corporation located in Rancho Cordova, California, hereinafter referred to as "Hauler".

Whereas, Processor owns and operates a recycling processing Facility located on Power Inn Road in Sacramento, California ("Facility") and Hauler owns and operates a hauling company located on Fitzgerald Road in Rancho Cordova, California.

Now, Therefore, in consideration of the mutual covenants contained herein, it is agreed as follows:

1) Receipt/Delivery: Processor agrees to receive from Hauler source separated and commingled recyclables for processing. Hauler agrees to deliver same material to the Processor in the quantity and of the quantity, at the price and upon the terms and conditions set forth herein.

2) Waste Stream Composition:

   a) Hauler agrees to provide commingled C&D recyclables (wood, cardboard, metals), source separated wood waste, source separated green waste, and/or other commingled recyclables (including, but not limited to, plastic, fiber, wood, ferrous and non ferrous metal) and/or other recyclable materials (any of the foregoing, "Recyclable Materials"). Recyclable Materials shall include the type of materials generated by commercial, industrial, governmental, residential and/or institutional customers.

   b) Processor shall reserve the right to reject any and all loads delivered by Hauler which contain more than diminimus amounts of hazardous materials and/or which contain more than 10% wet waste by volume ("Contaminated Load"). In the event Processor accepts a Contaminated Load, Processor shall have the right to charge Hauler an additional fee for contaminated tonnage, as outlined in Paragraph (6) (a), based on the total tonnage of contamination, provided that Processor notifies Hauler at the time of acceptance and confirms the additional fee in writing within three (3) days. Contaminated tonnage will be calculated by multiplying the percentage of contamination as measured by the load checker by the total tonnage of the Contaminated Load.

3) Delivery:

   a) Hauler agrees to deliver Recyclable Materials to the Processor at Processor's Facility between the hours of 7:00 a.m. and 5:00 p.m., seven days a week, Sunday through Saturday, or other hours agreed to by Hauler and Processor.

   b) Processor shall maintain and shall exercise reasonable care with respect to the security, handling, and safekeeping of Hauler unloading equipment and shall be

liable for all loss or damage to Hauler's trucks resulting from Processor's negligence; provided Hauler's trucks shall be maintained in a safe and legal condition.   Processor may reject any truck that is demonstrated to be unsafe for unloading.

c)   Processor shall maintain truck scales and will have truck scales certified by State Weights and Measures in accordance with California Weights and Measures code.

d)   Hauler's trucks shall be maintained at all times in a safe and legal condition.   Prior to the first delivery, hereunder, and subsequently as reasonably requested by Processor, Hauler shall provide evidence to Processor's satisfaction that Hauler's trucks and truck drivers are insured at least to the minimum standards required by law, but not less than one million ($1,000,000) general liability and property damage per incident.

4)   Term and Termination of Agreement:

a)   Term of Agreement.   The initial term of this agreement shall commence on the effective date above and shall continue for a period of three (3) years.   Thereafter, this Agreement shall be renewed for successive three (3) year terms unless terminated by either party by sixty (60) days written notice given on or before the commencement of the renewal term.

b)   Termination of Agreement.   This agreement may be terminated as follows:

(1)   This agreement may be terminated upon mutual agreement of the parties.   Such termination shall be effective sixty (60) days following the written agreement of the parties to terminate this agreement.

(2)   Pursuant to Paragraphs 4(a) or 11.

5)   Quantity:

a)   Hauler shall deliver to Processor at Processor's Facility, and Processor shall receive from Hauler, 26,000 tons of Recyclable Materials (the "Minimum Annual Quantity") and not more than 65,000 of Recyclable Materials (the "Maximum Annual Quantity") during each successive year beginning on the date of this Agreement ("Contract Year").

6)   Price:

a)   Hauler agrees to pay the Processor Thirty-two Dollars and Fifty Cents ($32.50) per ton for all Recyclable Materials that Hauler delivers to Processor, except that rates for particular Recyclable Materials specified on Exhibit "A", attached hereto, including clean wood waste, green waste, residential and commercial commingled recyclables, and other source separated recyclable materials are as specified on

23941-1

-2-

Exhibit "A". Additional charges for contaminated tonnage accepted by Processor are specified in Exhibit "A".

b) Hauler and Processor shall meet sixty (60) days prior to each Contract Year to determine rate increases for the subsequent Contract Year. Should Hauler and Processor not agree in writing to rate changes on or before thirty (30) days prior to each Contract Year, the rate shall increase by three percent (3%) effective as of the first day of such Contract Year.

7) Payment:

a) Hauler shall pay Processor net twenty (20) days from date of invoice.

b) Processor shall forward weights and recyclable data relative to the tonnage of Recyclable Material Hauler delivered to the Processor's Facility as required by Hauler.

8) Binding Effect; Successors and Assigns:

a) This agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

b) Neither party hereto shall assign or otherwise convey any of its rights, titles or interest under this agreement without the prior written consent of the other party hereto (which consent shall not be unreasonably withheld); provided, however, that without any such consent, either party hereto or its respective successors or permitted assignees may assign any or all of its rights, titles and interest hereunder to:

1) any person, corporation, bank, trust company, association or other business or governmental entity as security in connection with obtaining or arranging financing for such party; or

2) any person corporation, bank, trust company, association or other business or governmental entity in order to enforce any security assignment described in Article 11(b) herein.

c) Unless otherwise agreed by the parties hereto in a separate writing, no permitted assignment described above shall relieve the assigning party from any of its obligations under this agreement.

10) Notices: Each party shall designate in writing a representative to receive notices hereunder. Any notice, given by either party to the other bearing on this agreement shall be sent by overnight or certified mail, postage prepaid, return receipt requested, properly addressed to such representative. The representatives so designated are as follows:

Processor:

          Henry Dwyer
          Atlas Disposal Industries
          3423 Ramona Ave. Suite 11
          Sacramento, CA 95628

Hauler:

          Susan Farris or DVP
          BFI Waste Systems of North America, Inc.
          3326 Fitzgerald Road
          Rancho Cordova, CA 95742

If notice is sent by overnight mail, it shall be deemed delivered as of two (2) business days after it is transmitted; if notice is sent by certified mail, it shall be deemed delivered as of three (3) business days after it is deposited in the U.S. Mail as provided herein.

Either party may change the person or address specified in the Article upon giving the other party written notice of such change.   Routine operating instructions, requests, directions and notices shall not require a notice as above provided and may be given in such manner and to such persons as may be customary or practicable.

11)   Default and Remedies:

    a)    The failure by Processor or Hauler (the "Defaulting Party") to fulfill substantially any material obligations to the other party (the "Nondefaulting Party") under this agreement, unless excused by Force Majeure, shall constitute an Event of Default; provided that no such failure, action or event shall constitute and Event of Default unless and until:

        1)    The non-defaulting party shall have given written notice to the defaulting party specifying that an act, event or failure to act (default) has occurred which will, unless cured, constitute an event of default; and

        2)    The defaulting party shall not have cured such default within thirty (30) days from receipt of notice from the nondefaulting party.

    b)    If during the Term of the Agreement an Event of Default shall occur, then in any such case, in addition to any other remedies it may have, the nondefaulting party, at is option, may terminate this agreement by providing written notice of the defaulting party.

12)   Uncontrollable Circumstance.   "Uncontrollable Circumstance" shall mean any event or condition having a material and adverse effect on the rights, duties and obligations of either party hereunder, or on the Facility, or on the acquisition, lease, design, construction, equipping, start-up, operation, ownership or possession of any or all of them, if such event or condition is beyond the reasonable control, and not the result of wilful or negligent action or omission or a lack of reasonable diligence, of the party asserting the

Uncontrollable Circumstance; provided that the contesting in good faith of any event of condition constituting a change in law shall not constitute or be construed as a wilful or negligent action or a lack of reasonable diligence of such party. The foregoing provisions shall not be construed to require that either party observe a higher standard of conduct than that required by the usual and customary standards of the industry in question, as a condition to claiming the existence of an Uncontrollable Circumstance. Such events or conditions may include, but shall not be limited to, circumstances of the following kind:

(a)   an act of God, epidemic, landslide, lightning, hurricane, earthquake, fire, explosion, storm, flood or similar occurrence, an act of war, effects of nuclear radiation, blockade, insurrection, riot, civil disturbance or similar occurrences, strikes, lockouts, work slowdowns or stoppages, or similar labor difficulties affecting either party hereunder, or the operation of the Facility, or otherwise affecting or impacting the performances of either party's contractors and suppliers;

(b)   a change in law; or

(c)   condemnation of the Facility or its site.

13)   Operational Performance:

a)   Tipping/Cueing Time. Processor shall provide Facility, equipment, personnel, management and technical support to enable Hauler to enter Facility, drop loads, and leave Facility in an efficient, effective manner. Processor shall take necessary operational consideration to assure that the time needed for Hauler's vehicles to enter tip load, and exit Facility does not exceed fifteen (15) minutes.

b)   Diversion Guarantee. Through the operation of Processor's Facility, Processor shall divert a minimum of eighty percent (80%) of the incoming Recyclable Material delivered to the Facility by Hauler, averaged over each calendar quarter.

14)   Regulatory Reports and Data.

a)   Data. Processor shall monitor, track and prepare data required by a governmental or regulatory agency(ies) which directly pertains to the daily operation of the Facility and the volume and disposition of all recyclables accepted and processed by the Facility.

b)   Reports. In addition to the above, the Processor shall be responsible to prepare and submit any reports necessary as a result of this program, including solid waste reports required by governmental or regulatory agencies relative to diversion reports required by permitted Sacramento City/County Solid Waste Authority.

15)   Entire Agreement, Modification, Waiver. This agreement supersedes all prior and contemporaneous oral agreements, representations and understandings of the parties. No supplement, modification or amendment of this agreement shall be binding unless executed in writing by the Hauler and Processor. No waiver of any of the provisions of this

agreement shall be deemed, or shall constitute, a waiver of any other provisions, whether or not similar, nor shall it be binding unless executed in writing by the party making the waiver.

16)   Amendments.  This agreement cannot be changed orally, and no executory agreement shall be effective to waive, change, modify or discharge it in whole or in part unless such executory agreement is in writing and is signed by the parties against whom enforcement of any waiver, change, modification or discharge is sought.

17)   Governing law.   This agreement cannot is performable in the County of Sacramento, California and shall in all respects be governed by, and construed in accordance with, the substantive federal laws of the United States and the laws of the State of California.  The parties hereto irrevocably submit to the jurisdiction of the state and federal court sitting in Sacramento County, California, any action or proceeding arising out of or relating to this agreement and hereby irrevocably agrees that all claims in resect of such action or proceeding shall be heard and determined in a state of federal court sitting in Sacramento County, California.

18)   Waiver.  Should Processor accept materials that are not covered under this agreement or not allowed Processor shall not be deemed to have waived or modified this agreement on any manner nor any rights nor obligations of the Processor thereunder.

19)   Right of First Refusal.  If processor  ("Intended Seller") desires to sell and a proposed purchaser ("Intended Purchaser") desires to purchase  the Facility and related assets and business or the stock or ownership rights of any entity owning  the Facility and related assets and business (collectively, the "Business"), the Intended Seller shall give written notice to Hauler of all of the terms and conditions of such proposed transaction and the identity of the Intended Purchaser ("Notice of Intended Sale").  Hauler shall have the option to purchase the Business on the same terms and conditions of the proposed transaction, as set forth in the Notice of Intended Sale, provided that Hauler shall exercise such option by giving written notice (the "Exercise Notice") to the Intended Seller within thirty (30) days after Hauler's receipt of the Notice of Intended Sale (the "Exercise Period").  If Hauler timely exercises its option, then the Intended Seller shall sell, and Hauler shall purchase, within forty-five (45) days following Hauler's giving of the Exercise Notice, the Business on the same terms and conditions of the proposed transaction, as set forth in the Notice of Intended Sale.  If Hauler fails to timely exercise its option as specified above, the Intended Seller shall not be obligated to so sell the Business to Hauler, but shall be free to sell same to the Intended Purchaser with forty-five (45) days next following the expiration of the Exercise Period on the same terms and conditions as specified in the Notice of Intended Sale, but not otherwise.  If the Intended Seller fails to consummate the sale specified in such Notice of Intended Sale within such forty-five (45) day period, the provisions of this Section shall again be applicable to any subsequent transaction involving the sale of the Business.  The provisions of this Section shall apply throughout the term of this Agreement.

20)   Indemnity.  Except as otherwise herein provided, any and all costs, expenses, and liabilities relating to the obligations to be performed by the Processor arising or accruing during the



term of the agreement, are the responsibility of the Processor and will be paid by the Processor promptly upon receipt of billing thereof, and the Processor hereby holds Hauler harmless with respect to such obligations of the Processor and agrees to indemnify Hauler from any and all loss, liability, or claim, including, but limited to, reasonable attorney's fees, relating to the Processors obligation. Similarly, except as otherwise herein provided, any and all costs, expenses, and liabilities relating to the obligations performed by the Hauler, will be paid by Hauler promptly upon receipt of billing thereof, and Hauler hereby holds Processor harmless with respect to such obligations of the Hauler and agrees to indemnify the Processor from any and all loss, liability, or claim, including, but not limited to, reasonable attorney fees, relating to such Hauler obligations.

21)   Severability.   If any provision of this agreement is determined by a court of competent jurisdiction to be invalid or unenforceable, the remainder of this agreement shall nonetheless remain in full force and effect.

22)   Attorney's Fees.   In the event of any controversy, claim, or dispute between the parties affecting or relating to the subject matter of performance of this agreement, the prevailing party shall be entitled to recover from the nonprevailing party all its reasonable expenses, including reasonable attorney's, expert witness, and accountant fees.

23)   Most Favored Customer.   During the term of this agreement between Processor and Hauler, and any subsequent, or agreement terms between Processor and Hauler, Processor shall in no case charge the Hauler more for receiving and processing recyclable materials as specified herein than Processor charges any other customer.

Agreed and Accepted by Processor:

_____          3-19-99
Henry B.E. Dywer                            Date
President
Atlas Disposal Industries


Agreed and Accepted by Hauler:

_____          3-19-99
Susan Farris                                Date
District Vice President
BFI Waste Systems of North America, Inc.

23941-1                          -7-

# EXHIBIT B
# to Complaint

Filed 4/8/04   Atlas Disposal Indust. v. BFI Waste Systems CA3

<u>NOT TO BE PUBLISHED</u>

California Rules of Court, rule 977(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 977(b). This opinion has not been certified for publication or ordered published for purposes of rule 977.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| ATLAS DISPOSAL INDUSTRIES, LLC, | C042391 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 00AS03373) |
| BFI WASTE SYSTEMS OF NORTH AMERICA, INC., | |
| Defendant and Appellant. | |

Plaintiff Atlas Disposal Industries, LLC (Atlas), operates a materials recovery facility at which mixed recyclables and waste are sorted and certain recyclable materials are recovered and sold.  Defendant BFI Waste Systems of North America, Inc. (BFI), hauls residential, commercial, industrial, and construction waste and materials.  BFI and Atlas entered into a Disposal Services Agreement (agreement) requiring BFI to deliver an annual minimum of 26,000 tons of source separated commingled recyclables.  Dissatisfied with BFI's performance under the agreement, Atlas filed suit, alleging breach of contract, breach

1

of the covenant of good faith and fair dealing, and fraud. Following a court trial, the court found BFI breached the agreement by both failing to deliver the annual minimum tonnage and failing to deliver source separated commingled recyclables. The court awarded Atlas $316,192.50, the equivalent of $32.50 for each of the 9,729 tons not delivered. BFI appeals, contending the court erred in awarding Atlas its lost gross revenues as damages for breach of contract. We shall affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

**The Facility**

One person's trash is another person's treasure. In April of 1998 Atlas opened its recycling facility (facility). Henry Dwyer served as president and general manager. At the facility, Atlas sorted through its customers' waste and selected out materials to be recycled and sold. An elevated conveyor belt system passed the waste materials by workers, who sorted out recyclable materials such as wood, metal, plastic, cardboard, and paper. The nonrecyclable waste passed by as "residue." The residue was disposed of as landfill.

**The Agreement**

The parties began negotiating the agreement in early 1999. After Atlas and BFI exchanged several drafts, the parties executed the agreement in March of 1999. The agreement was for a three-year term beginning on March 19, 1999. Dwyer negotiated on behalf of Atlas; Jerry Mayberry, manager of business development, negotiated on behalf of BFI.

2

The agreement provides, in part: "[BFI] agrees to provide commingled C&D recyclables (wood, cardboard, metals), source separated wood waste, source separated green waste, and/or other commingled recyclables (including, but not limited to, plastic, fiber, wood, ferrous and non ferrous metal) and/or other recyclable materials (any of the foregoing, 'Recyclable Materials'). Recyclable Materials shall include the type of materials generated by commercial, industrial, governmental, residential and/or institutional customers."

The agreement also contains a right of refusal on the part of Atlas: "[Atlas] shall reserve the right to reject any and all loads delivered by [BFI] which contain more than diminimus [sic] amounts of hazardous materials and/or which contain more than 10% wet waste by volume ('Contaminated Load'). In the event [Atlas] accepts a Contaminated Load, [Atlas] shall have the right to charge [BFI] an additional fee for contaminated tonnage, as outlined in Paragraph (6)(a), based on the total tonnage of contamination, provided that [Atlas] notifies [BFI] at the time of acceptance and confirms the additional fee in writing within three (3) days. Contaminated tonnage will be calculated by multiplying the percentage of contamination as measured by the load checker by the total tonnage of the Contaminated Load."

The agreement spells out the amount of recyclable materials BFI must supply: "[BFI] shall deliver to [Atlas] at [Atlas's] Facility, and [Atlas] shall receive from [BFI], 26,000 tons of Recyclable Materials (the 'Minimum Annual Quantity') and not

3.

more than 65,000 of Recyclable Materials (the 'Maximum Annual Quantity') during each successive year beginning on the date of this Agreement ('Contract Year')."

The agreement sets the price:  "[BFI] agrees to pay [Atlas] Thirty-two Dollars and Fifty Cents ($32.50) per ton for all Recyclable Materials that [BFI] delivers to [Atlas], except that rates for particular Recyclable Materials specified on Exhibit 'A', attached hereto, including clean wood waste, green waste, residential and commercial commingled recyclables, and other source separated recyclable materials are as specified on Exhibit 'A'.  Additional charges for contaminated tonnage accepted by [Atlas] as specified in Exhibit 'A'."[1]

Finally, the agreement contains a "Diversion Guarantee": "Through the operation of [Atlas's] facility, [Atlas] shall divert a minimum of eighty percent (80%) of the incoming Recyclable Material delivered to the Facility by [BFI], averaged over each calendar quarter."

**The Ordinance**

At the time the agreement was negotiated, Solid Waste Authority Ordinance 2 (SWA 2) was expected to become effective on July 1, 1999.  SWA 2 required waste haulers, such as BFI, to divert from landfill 30 percent of the total commercial waste they collected or be subjected to losing their hauling permits. It required facilities to divert 30 percent of the waste

---

[1] No exhibit A was ever agreed to by the parties.

4

accepted from haulers other than permitted haulers such as BFI. BFI's agreement with Atlas would allow BFI to meet the requirements of SWA 2.

However, during the term of the contract, this guarantee became less valuable to BFI. In June 1999 Sacramento County announced that enforcement of the 30 percent diversion requirement would be delayed until February 2000. The county later extended the delay through April 2000.

Early during the term of the contract, Allied Waste acquired BFI. Allied was building its own recycling plant, which would become operative in mid-2000. The delay in enforcement of the ordinance allowed Allied to complete construction of the recycling plant and permitted BFI to comply with the 30 percent diversion requirement of SWA 2 without delivering to Atlas.

**Varieties of Recycled Materials**

The Atlas facility was permitted to receive only "source-separated" and "commingled recyclables." Source-separated recyclables are recyclables that the hauler has separated from the nonrecyclable trash. Commingled recyclables are just what they sound like: recyclables that are commingled. Only source-separated recyclables commingled together could be accepted by the Atlas facility.

The California Code of Regulations provides the following definition of "source separated": "'Source Separated' means materials, including commingled recyclables, that have been separated or kept separate from the solid waste stream, at the

point of generation, for the purpose of additional sorting or processing those materials for recycling or reuse in order to return them to the economic mainstream in the form of raw material for new, reused, or reconstituted products which meet the quality standards necessary to be used in the marketplace." (Cal. Code Regs., tit. 14, § 17402.5, subd. (b)(4).)

The Integrated Waste Management Board issued a recycling facility permit to the Atlas facility. The permit did not authorize the facility to accept municipal solid waste. In addition, the permit did not allow Atlas to accept more than 10 percent wet waste by volume. Wet waste is common trash or garbage.

BFI's Mayberry was a member of the Sacramento City-County Solid Waste Advisory Committee (Committee). The Committee consists of appointed industry representatives who advise the Solid Waste Authority on meeting state mandated diversion requirements. In meetings, the Committee frequently discussed source separated commingled recyclables. Atlas's expert, James Howell, also served on the Committee. Howell testified Mayberry's service on the Committee would have exposed Mayberry to detailed testimony regarding the definition of commingled recyclables and source separation.

At trial, Mayberry testified he understood that a recycling facility could have no more than 10 percent of nonrecycled material leaving the facility. The court asked: "That's 90 percent recyclable, isn't it?" Mayberry replied: "Yes, but it's stating it differently."

6

## Performance Under the Agreement

The purpose of the agreement was to deliver recyclable materials to a recycling plant. Atlas intended to make a profit by charging BFI a fee for the use of the facility and by selling the recycled materials. BFI sought the 30 percent diversion guarantee mandated by the ordinance.

At the beginning of the agreement, BFI planned on supplying open top "roll off" boxes. Roll off boxes are primarily from new construction and contain a multiplicity of recyclables. However, BFI found it did not have sufficient construction and demolition loads to meet the agreement's minimum requirements. To increase deliveries, BFI added more trash loads.

Atlas complained that BFI delivered materials with more than 10 percent nonrecycled materials in violation of the agreement's provisions. Atlas also repeatedly informed BFI that it was failing to make the minimum deliveries of source separated recyclable materials. Contaminated loads take longer to process at a greater cost.

In response, Mayberry informed Atlas that BFI's drivers needed better education as to acceptable materials. Atlas had education courses for BFI drivers. Atlas also established a procedure for advising BFI of contaminated loads so that BFI could make changes with customers.

Atlas employee Christopher Bungay testified regarding his job checking loads as they were received at the facility. Bungay ascertained whether the loads were appropriate for

recycling.  Atlas also employed "spotters," who checked incoming
trucks for contaminated loads.  Bungay supervised the spotters.

BFI delivered two types of truckloads to the Atlas
facility:  roll-off loads and front loads.  A spotter checked
roll-off loads by climbing on top and looking into the container
to estimate the contamination level.  Front load trucks are
impossible to inspect for nonrecyclables because the load is
compacted and only a small portion is visible.  When the door
opens, the material falls out, forcing Atlas to accept the
material regardless of its makeup.  Only BFI brought front load
trucks to the facility.

Bungay estimated BFI's roll-off loads met the agreement's
requirements only 30 to 40 percent of the time, failed to meet
the standard 40 to 60 percent of the time, and contained
approximately 60 to 70 percent recyclable materials.  In a
contract year, BFI loads contained about 50 percent recyclable
materials.  Atlas accepted marginal loads, loads that did not
contain at least 80 percent recyclable material, from BFI.

**The Complaint and the Trial Court's Decision**

Atlas filed a complaint, alleging breach of contract,
breach of the covenant of good faith and fair dealing, and
fraud.  The court issued a tentative statement of decision
finding in favor of Atlas and awarding damages.  BFI requested a
statement of decision, and both parties submitted proposals as
to the content of the statement of decision.  Subsequently, the
court adopted the tentative statement of decision.

In its statement, the court summarized the agreement
between the parties.  The court found that Atlas's negotiator,
Dwyer, and BFI's negotiator, Mayberry, were both highly
experienced in the industry.  The agreement required BFI to
deliver a minimum of 26,000 tons of "'source separated and
commingled recyclables'" during each year of the contract.  In
return, BFI received an 80 percent diversion credit from Atlas
to meet the requirements of SWA 2.  The court also discussed the
reasons the diversion guarantee became less important to BFI
during the term of the agreement.

The court recounted BFI's efforts to meet the agreement's
delivery requirements.  The court found that, on average, BFI
loads delivered to Atlas contained only 50 percent recyclable
materials.  Atlas continually complained to BFI about the
excessive contamination of BFI loads.  The court found BFI
breached the agreement by failing to deliver source separated
commingled recyclables.  Instead, BFI delivered recyclables
commingled with more than 10 percent trash.

The court, in determining damages for BFI's breach of the
agreement, cited Civil Code section 3300.[2]  The court noted the
basic object of damages is compensation:  "The aim is to put the
injured party in as good a position as he would have been had
performance been rendered as promised."

---

[2]  All further statutory references are to the Civil Code unless
otherwise indicated.

9

The court discussed the "tip fee shortfall" claimed by Atlas: "[Atlas] claims $316,192.50 based on the rate of 9729 tons at $32.50 per ton. [Atlas] produced records and the testimony of its expert James Howell to establish this amount. Mr. Howell testified that his opinion as to the tonnage amount was based largely on the certified public weigh master records at Atlas Disposal. [BFI] argued, but failed to produce concrete evidence to show that the calculation of the amount of tons actually received is erroneous."

The court also rejected BFI's argument that the shortfall amount should be reduced by the number of tons wrongfully rejected by Atlas. The court found BFI failed to meet its burden of producing sufficient evidence from which the court could calculate the number of tons for an offset. According to the court: "[BFI's] employees' testimony regarding the quality and the number of loads rejected is anecdotal and based on assumptions that lack any proper foundation. The testimony is insufficient to controvert [Atlas's] evidence that it rejected the loads because they contained unacceptable amounts of non-recyclable materials. Moreover, even assuming that some of the loads were wrongfully rejected, [BFI] has not shown that this was the cause of its inability to meet its minimum commitment. [BFI] has failed to show that it is entitled to any offset."

After ascertaining the evidence supported a price of $32.50 per ton, the court concluded: "The evidence shows that [BFI] was trying to meet its commitment by delivering commingled commercial loads. It is reasonable to infer from the

10

circumstances that the 9729 missing tons would have been delivered in the same manner.  The only agreed fee that is reasonably applicable to such loads is $32.50.  Based on the shortfall amount of 9729 tons at the rate of $32.50 a ton, [Atlas] is entitled to the principal amount of $316,192.50 for the tip fee shortfall."

The court also considered Atlas's claim for lost profits based on commodity revenue shortfall; excess disposal costs; and lost commodity revenue on BFI excess disposal tonnage.  The court noted:  "Essentially, the three areas identified are elements of the profits [Atlas] expected to make from the contract."  The court discussed each claim and found insufficient evidence to support any award of lost profits.  In part, the court based its decision on the fact that Atlas was a young company without a track record of profits or losses, rendering the calculation of lost profits too speculative to meet the standard of reasonable certainty.  Finally, the court denied Atlas's claim for punitive damages.

The trial court entered judgment in favor of Atlas.  BFI filed a timely notice of appeal.

## DISCUSSION

### I

The parties vociferously disagree over the appropriate standard of review.  BFI contends the question of whether a trial court applied an incorrect or incomplete measure of damages is one of law, which we review de novo.  Atlas agrees the determination of the proper measure of damages presents a

11.

question of law.  However, Atlas also contends the application of the appropriate damage standard to the facts is essentially a factual determination governed by the substantial evidence standard.

BFI attempts to couch its appeal as challenging the measure of damages employed by the court in making its award.  However, BFI is actually challenging the court's *calculation* of Atlas's damages, arguing the court erred in not factoring into the award Atlas's costs of processing the recyclables.  BFI essentially contends the court erred in not offsetting the costs of processing the recyclables.

The amount of damages is a fact question, committed to the discretion of the trier of fact.  All presumptions favor the trial court's ruling, which is entitled to great deference because the trial judge, having been present at trial, necessarily is more familiar with the evidence and is bound by the more demanding test of weighing conflicting evidence rather than the standard of appellate review under the substantial evidence test.  We must uphold an award of damages whenever possible.  (*Westphal v. Wal-Mart Stores, Inc.* (1998) 68 Cal.App.4th 1071, 1078 (*Westphal*).)

In addition, our power to review the trier of fact's determination of damages is severely circumscribed.  We may interfere with that determination only where the sum awarded is so disproportionate to the evidence as to suggest that the verdict was the result of passion, prejudice, or corruption, or where the award is so out of proportion to the evidence that it

shocks the conscience.  (*Johnson v. Stanhiser* (1999)
72 Cal.App.4th 357, 361.)

## II

The basic object of damages is compensation, and in
contract law, the theory is that the party injured by a breach
should receive as nearly as possible the equivalent of the
benefits of performance.  The law aims to put the injured party
in as good a position as he or she would have been in had
performance been rendered as promised.  (*Auerbach v. Great
Western Bank* (1999) 74 Cal.App.4th 1172, 1191.)  However,
contract damages that are speculative, remote, imaginary,
contingent, or merely possible cannot serve as a legal basis
for recovery.  (*Scott v. Pacific Gas & Electric Co.* (1995)
11 Cal.4th 454, 473.)

## III

In determining the damages due Atlas, the trial court cited
section 3300.  Section 3300 provides:  "For the breach of an
obligation arising from contract, the measure of damages, except
where otherwise expressly provided by this code, is the amount
which will compensate the party aggrieved for all the detriment
proximately caused thereby, or which, in the ordinary course of
things, would be likely to result therefrom."

The court applied section 3300 and determined BFI failed to
deliver 9,729 tons, for which BFI would have paid Atlas $32.50
per ton for a total of $316,192.50.  This, the court found, put
Atlas in as good a position as it would have been in had BFI
delivered the tonnage as required by the agreement.

However, BFI accuses the trial court of ignoring an important corollary to section 3300: section 3358. Section 3358 states:  "Except as expressly provided by statute, no person can recover a greater amount in damages for the breach of an obligation, than he could have gained by the full performance thereof on both sides."

In a nutshell, BFI argues:  "Unquestionably, the $316,192 represents the sum that BFI would have paid Atlas to receive and process 9,729 tons of waste, and does not account for the costs that Atlas would have incurred to process these loads at its [materials recovery facility] -- as the company was contractually obligated to do under the [agreement] to fulfill its 80% diversion guarantee to BFI.  Because Atlas' processing costs are not included in this measure of damages, the court's award improperly puts Atlas in a better position than the company would have been in had the parties fully performed the contract.  The Court's failure to subtract Atlas' processing costs from the gross revenues was an error.  See, Civil Code § 3358."  BFI characterizes the court's award as an award of "gross revenues" as opposed to a proper award of "lost profits."

On a superficial level, BFI's argument seems sound and persuasive.  However, BFI overlooks an important aspect of the agreement between the parties.  As the court noted, Atlas intended to make a profit by charging BFI a fee for the use of its facility, the $32.50 per ton tipping fee, and by selling the recovered recycling materials.  To recover the recyclables,

14

Atlas would incur certain processing costs, the costs BFI seeks
to offset against the tipping fee damages awarded by the court.

The costs of recovery comprise only half of the equation.
After recovering the recyclables, Atlas sought to sell them for
a profit.  Atlas sought these lost profits at trial.  After
considering the evidence presented at trial, the court
concluded:  "There is insufficient evidence to support a finding
that [Atlas] suffered actual or potential loss of profits
because of any shortfall in commodity revenue during the first
year of the contract."

BFI seeks to deduct the costs of recovering the recyclables
from the damages awarded by the trial court.  BFI argues:
"Here, under Section 3358, the trial court was required to
(1) determine what it would have cost Atlas to fully perform the
contract by processing the missing 9,729 tons and disposing of
the residue, and (2) subtract that cost from the $316,192.50 in
lost gross revenue that BFI would have paid Atlas as tip fees to
receive and process the 9,729 tons.  Only after subtracting
Atlas' processing and disposal costs from the gross revenues
could the trial court determine Atlas' damages from the
shortfall.  This would have been Atlas' lost profits from the
shortfall and was the proper measure of damages in this case."

BFI places the burden of ascertaining the offset it seeks
against Atlas squarely on the trial court.  However, the burden
is elsewhere:  the party who seeks to establish a claim or
defense has the burden of proof on that fact.  (Evid. Code,

§ 500; *Kellogg v. Asbestos Corp. Ltd.* (1996) 41 Cal.App.4th 1397, 1408.)

Here, the trial court specifically found BFI failed to meet its burden of producing sufficient evidence from which the court could calculate the number of tons for an offset.  The court termed the proffered evidence "anecdotal" and "based on assumptions that lack any proper foundation."  The newness of Atlas's facility and the contaminated loads delivered by BFI made lost profits too speculative to calculate.  The calculation of expenses, a factor in determining profits, was also difficult.  BFI made no effort to prove the amount of any offset and now complains that the trial court erred in failing to deduct the unproven amount.

Generally, the amount and existence of damages is a factual question committed to the discretion of the trial court.  On appeal, all presumptions favor the trial court's ruling, which is entitled to great deference.  The trial court necessarily is more familiar with the evidence and is bound by the more demanding test of weighing conflicting evidence.  (*Westphal*, *supra*, 68 Cal.App.4th at p. 1078.)

While section 3301 provides that no damages can be recovered for a breach of contract that are not clearly ascertainable in both nature and origin, the fact that the amount of damage may not be susceptible of exact proof or may be uncertain, contingent, or difficult to ascertain does not bar recovery.  Where a defendant, by willful breach of contract, has given rise to the difficulty of proving the amount of a claimed

16

loss of profits, it is proper to require only that the plaintiff show the amount of damages with reasonable certainty and to resolve uncertainties against the defendant. (*Aronowicz v. Nalley's, Inc.* (1972) 30 Cal.App.3d 27, 53.)

Here, the court, after considering all the evidence before it, awarded Atlas the tipping fee it would have received had BFI performed under the agreement. Faced with a lack of evidence as to both the revenues Atlas would have generated on the sale of recyclable commodities and the expenses incurred in producing that revenue, the court declined to award lost profits. The same evidentiary vacuum that deprived the court of a basis for awarding lost profits also renders untenable BFI's claim for an offset. Given the evidence, we find the court's award appropriate under the circumstances of this case.

## DISPOSITION

The judgment is affirmed. Atlas shall recover costs on appeal.

_____ RAYE _____ , J.

We concur:

_____ BLEASE _____ , Acting P.J.

_____ HULL _____ , J.

# EXHIBIT B
## to
## Declaration of James T. Cahalan

1  THOMAS M. BRUEN (SB# 63324)
   ERIK A. REINERTSON (SB# 218031)
2  LAW OFFICES OF THOMAS M. BRUEN
   A Professional Corporation
3  1990 N. California Boulevard, Suite 940
   Walnut Creek, CA 94596
4  Telephone: (925) 295-3131

5  Attorneys for Defendant
   BFI WASTE SYSTEMS OF NORTH
6  AMERICA, INC.

7

8              UNITED STATES DISTRICT COURT

9              EASTERN DISTRICT OF CALIFORNIA

10

11  ATLAS DISPOSAL INDUSTRIES, LLC   )  Case No.  05CV989 MCE KJM
                                )
12             Plaintiff,       )
                                )  DEFENDANT BFI WASTE SYSTEMS
13  v.                        )  OF NORTH AMERICA, INC.'S
                                )  ANSWER TO COMPLAINT
14  BFI WASTE SYSTEMS OF NORTH     )
    AMERICA, INC.,             )  DEMAND FOR JURY TRIAL
15                                )
             Defendant.     )
16  _____)

17      Defendant BFI WASTE SYSTEMS OF NORTH AMERICA, INC. ("Defendant") answers

18  Plaintiff ATLAS DISPOSAL INDUSTRIES, LLC's ("Plaintiff") Complaint filed on or about

19  March 18, 2005, and hereby admits, denies, and alleges as follows:

20      1.      Answering paragraphs 1 and 2, Defendant lacks information or belief as to the

21  allegations of paragraphs 1 and 2 of the Complaint, and on that basis denies each and every

22  allegation thereof.

23      2.      Answering paragraph 3, Defendant is informed and believes that Plaintiff purports to

24  be a Utah limited liability company.  Except as so expressly admitted, Defendant lacks information

25  or belief as to the remaining allegations of paragraph 3 of the Complaint, and on that basis denies

26  each and every such allegation.

27      3.      Answering paragraph 4, Defendant admits that Defendant is a corporation.  Except as

28  so expressly admitted, Defendant denies each and every remaining allegation of paragraph 4.

1    4.    Answering paragraph 7, Defendant denies each and every allegation of paragraph 7.

2    5.    Answering paragraph 8, Defendant responds that the Complaint purports to attach a

3  form cause of action for an alleged breach of contract and the Complaint speaks for itself.

4  Defendants incorporates herein by reference its responses to the allegations of that cause of action

5  for breach of contract-- specifically, Defendant's responses to paragraphs BC-1 through BC-5 of the

6  Complaint and to the Attachment to paragraph BC-1.

7    6.    Answering paragraph 10, Defendant denies each and every allegation thereof.

8    7.    Answering paragraph BC-1, Defendant admits that on or about March 19, 1999, a

9  document alleged by Plaintiff to be a written contract was signed by Plaintiff and Defendant, and that

10  a copy of that document is attached as Exhibit A to Plaintiff's Complaint. Defendant denies that the

11  parties agreed on the prices for those materials to be listed in Exhibit A, and further alleges that

12  Exhibit A was never agreed on by the parties.  Further, Defendant alleges that Plaintiff purported to

13  unilaterally change the pricing for the materials to be delivered to Plaintiff under the alleged contract.

14    8.    Answering the allegations in paragraph 1 of the Attachment to paragraph BC-1 to the

15  Complaint, Defendant admits that on or about March 19, 1999, a document alleged by Plaintiff to be

16  a written contract was signed by Plaintiff and Defendant, and that a copy of that document is

17  attached as Exhibit A to Plaintiff's Complaint. Defendant further alleges that its execution of the

18  document was conditioned on the further agreement of the parties that the contract would not be

19  effective until the parties agreed on the terms and prices to be included in Exhibit A to the contract.

20  Defendant denies that the parties agreed on the prices for those materials to be listed in Exhibit A,

21  and further alleges that Exhibit A was never agreed on by the parties.  Further, Defendant alleges that

22  Plaintiff purported to unilaterally change the pricing for the materials to be delivered to Plaintiff

23  under the alleged contract.  Except as so expressly admitted or alleged herein, Defendant denies each

24  and every remaining allegation of paragraph 1 of the Attachment to paragraph BC-1 of the

25  Complaint.

26    9.    Answering the allegations in paragraph 2 of the Attachment to paragraph BC-1 to the

27  Complaint, Defendant admits that on or about March 19, 1999, a document alleged by Plaintiff to be

28  a written contract was signed by Plaintiff and Defendant, and that a copy of that document is

DEFENDANT BFI WASTE SYSTEMS OF NORTH
AMERICA, INC.'S ANSWER TO COMPLAINT                 2

1    attached as Exhibit A to Plaintiff's Complaint. Defendant further alleges that its execution of the

2    document was conditioned on the further agreement of the parties that the contract would not be

3    effective until the parties agreed on the terms and prices to be included in Exhibit A to the contract.

4    Defendant denies that the parties agreed on the prices for those materials to be listed in Exhibit A,

5    and further alleges that Exhibit A was never agreed on by the parties.  Further, Defendant alleges that

6    Plaintiff purported to unilaterally change the pricing for the materials to be delivered to Plaintiff

7    under the alleged contract.  Except as so expressly admitted or alleged herein, Defendant denies each

8    and every remaining allegation of paragraph 2 of the Attachment to paragraph BC-1 of the

9    Complaint.

10          10.     Answering the allegations in paragraph 3 of the Attachment to paragraph BC-1 to the

11   Complaint, Defendant admits that the trial court, in an action entitled *Atlas Disposal Industries, LLC*

12   *v. BFI Waste Systems of North America, Inc.*, Case No. 00AS03373, Superior Court of California,

13   County of Sacramento, found that Defendant had breached the agreement and that Defendant was

14   ordered to pay Plaintiff some of Plaintiff's alleged damages and attorneys' fees, and that this

15   judgment was affirmed by the Court of Appeal of the State of California.  Defendant further admits

16   that the Court of Appeal's unpublished decision is attached as Exhibit B to the Complaint. Except as

17   so admitted, Defendant denies generally and specifically the allegations of paragraph 3 of the

18   Attachment to paragraph BC-1 to the Complaint.

19          11.     Answering the allegations in paragraph 4 of the Attachment to paragraph BC-1 to the

20   Complaint, Defendant denies each and every allegation thereof. Defendant further alleges that any

21   such purported claims of Plaintiff are barred by the prior Judgment in *Atlas Disposal Industries, LLC*

22   *v. BFI Waste Systems of North America, Inc.*, Case No. 00AS03373, and by Plaintiff's failure to

23   pursue any alleged additional claims of Plaintiff in that action or on a timely basis.

24          12.     Answering the allegations in paragraph 5 of the Attachment to paragraph BC-1 to the

25   Complaint, Defendant denies each and every allegation thereof.

26          13.     Answering paragraph BC-2, Defendant admits that Defendant notified Plaintiff well

27   in advance of the trial in *Atlas Disposal Industries, LLC v. BFI Waste Systems of North America,*

28   *Inc.*, Case No. 00AS03373, that Defendant would cease all further deliveries to Plaintiff and did in

1   fact do so. Except as so expressly admitted herein, Defendant denies each and every allegation of

2   paragraph BC-2.

3       14.     Answering paragraph BC-3, Defendant denies each and every allegation of paragraph

4   BC-3 of the Complaint.

5       15.     Answering paragraph BC-4, Defendant denies each and every allegation of paragraph

6   BC-4 of the Complaint.

7       16.     Answering paragraph BC-5, Defendant denies each and every allegation of paragraph

8   BC-5 of the Complaint.

9       17.     Except as expressly alleged or admitted in the preceding paragraphs, Defendant

10  denies each and every remaining allegation of the Complaint.

11

12                          **AFFIRMATIVE DEFENSES**

13      As and for affirmative defenses to the Complaint, Defendant further alleges as follows:

14                          FIRST AFFIRMATIVE DEFENSE

15                          (Failure to State a Cause of Action)

16      1.     The Complaint, and each cause of action therein, fails to allege facts sufficient to state

17  a claim or to constitute a cause of action against Defendant.

18                          SECOND AFFIRMATIVE DEFENSE

19                          (Res Judicata)

20      2.     The Complaint, and each cause of action therein, is barred by the judgment in *Atlas*

21  *Disposal Industries, LLC v. BFI Waste Systems of North America, Inc.*, Case No. 00AS03573,

22  Superior Court of California, County of Sacramento.  Said judgment constitutes a merger and bar of

23  such claims under the doctrine of res judicata.

24                          THIRD AFFIRMATIVE DEFENSE

25                          (Statutes of Limitation)

26      3.     The Complaint, and each cause of action therein, is barred by the applicable

27  statutes of limitations, including California Code of Civil Procedure §§ 337, 337.1, 337a, 338, 339,

28  340, 343 and 360.

DEFENDANT BFI WASTE SYSTEMS OF NORTH
AMERICA, INC.'S ANSWER TO COMPLAINT          4

1

### FOURTH  AFFIRMATIVE DEFENSE

2

(Estoppel)

3   4.   Plaintiff is, by its actions, conduct and failure to perform contractual obligations and

4   promises, estopped to seek any recovery against Defendant respecting the underlying claims.

5

### FIFTH AFFIRMATIVE DEFENSE

6

(General Waiver)

7   5.   Plaintiff has waived the claims asserted in the Complaint.

8

### SIXTH AFFIRMATIVE DEFENSE

9

(Laches)

10   6.   Plaintiff has unreasonably delayed the commencement of this action and prejudiced

11   Defendant, whereby the Complaint, and each cause of action therein, is barred by the doctrine of

12   laches.

13

### SEVENTH AFFIRMATIVE DEFENSE

14

(Unclean Hands)

15   7.   Plaintiff's claims are barred by Plaintiff's unclean hands.

16

### EIGHTH AFFIRMATIVE DEFENSE

17

(Proximate Cause)

18   8.   Plaintiff's claims and damages, if any, were proximately caused by actions, performed

19   or omitted negligently by Plaintiff, its officers, agents and/or employees, and/or by Plaintiff's breach

20   of contract, and Plaintiff's recovery, if any, should be offset to the extent that the damages or losses,

21   if any, were proximately caused by the negligence or breach of contract of Plaintiff, its officers,

22   agents and/or employees.

23

### NINTH AFFIRMATIVE DEFENSE

24

(Comparative Fault)

25   9.   Plaintiff's damages, if any, are the responsibility of third parties, including, but not

26   limited to, the Plaintiff and other unknown, unnamed parties, and such liability, if any, should be

27   apportioned according to fault.

28

TENTH AFFIRMATIVE DEFENSE

(Comparative Negligence)

10.     Plaintiff failed to exercise reasonable and ordinary care, caution, or prudence in order to avoid the alleged damages.  The resulting damages, if any, sustained by Plaintiff were proximately caused and contributed to by the negligence of Plaintiff.

ELEVENTH AFFIRMATIVE DEFENSE

(Assumption of Risk)

11.     The damages and losses sustained by Plaintiff as set forth in the Complaint, if any, were caused by risks of which Plaintiff was well aware, understood, agreed to, voluntarily entered into, undertook and assumed unto itself.

TWELFTH AFFIRMATIVE DEFENSE

(Consent)

12.     Plaintiff consented to any and all acts of Defendant of which the Plaintiff now complains.

THIRTEENTH AFFIRMATIVE DEFENSE

(Failure to Mitigate)

13.     Plaintiff failed to mitigate the damages described in the Complaint, if any, and Defendant is entitled to an offset for any damages for which it is held liable, which are or were the result of Plaintiff's failure to mitigate its damages.

FOURTEENTH AFFIRMATIVE DEFENSE

(Failure of Consideration)

14.     Plaintiff failed to perform any contract alleged in the Complaint.  If such contract is found to exist and be enforceable and, pursuant to its terms, performance by Plaintiff was a condition precedent to and/or condition concurrent with the performance of Defendant's alleged obligation, then Defendant is relieved of its alleged obligation to perform.  Plaintiff's failure and refusal to perform its obligations relieved Defendant of any alleged duty to perform on its part.

1

## FIFTEENTH AFFIRMATIVE DEFENSE

2

(Material Breach)

3    15.    If a valid and enforceable contract is found to exist, which Defendant denies, Plaintiff

4  has materially breached the contract alleged in Plaintiff's Complaint.  This material breach has

5  relieved Defendant of the obligations which Plaintiff alleges have not been satisfied.

6

## SIXTEENTH AFFIRMATIVE DEFENSE

7

(Non-Occurrence of Conditions Precedent)

8    16.    If a valid and enforceable contract is found to exist, which Defendant denies, certain

9  conditions precedent were to occur before Defendant was required to perform certain obligations

10  under any contract alleged in the Complaint.  Those conditions have not occurred, thereby relieving

11  Defendant of the obligations which Plaintiff alleges have not been satisfied.

12

## SEVENTEENTH AFFIRMATIVE DEFENSE

13

(Impossibility)

14    17.    If a valid and enforceable contract is found to exist, which Defendant denies,

15  Defendant has performed all conditions and obligations of any alleged contract with Plaintiff, except

16  for the contract conditions or obligations which are impossible to perform.

17

## EIGHTEENTH AFFIRMATIVE DEFENSE

18

(Statute of Frauds)

19    18.    With regard to any oral representations or promises or implied contracts allegedly

20  relied upon by Plaintiff in this action, any such alleged promises, representations and/or contract of

21  Defendant are unenforceable pursuant to, and any action based thereon is barred by, the applicable

22  statute of frauds.

23

## NINETEENTH AFFIRMATIVE DEFENSE

24

(Speculative Damages)

25    19.    The damages claimed by Plaintiff are speculative, depend on the happening of events

26  which are not reasonably certain to occur, may be mitigated by future events, and cannot be

27  determined with the degree of certainty required by law.

28

DEFENDANT BFI WASTE SYSTEMS OF NORTH
AMERICA, INC.'S ANSWER TO COMPLAINT          7

## TWENTIETH AFFIRMATIVE DEFENSE

### (Set-Off and Recoupment)

20.    Defendant is entitled to a set-off against Plaintiffs' claims of any and all sums or damages that Plaintiff may owe Defendant, including damages resulting from Plaintiff's breach of its obligations and its own negligence.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

### (Failure to Exhaust)

21.    Plaintiff has failed to exhaust its contractual remedies.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

### (Failure to Notify Defendant)

22.    Plaintiff failed to provide Defendant with timely notice of any requested claim, has failed to identify the goods to any alleged contract, and has failed to meet the contractual pre-conditions to pursuing Plaintiff's claims in this action.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

### (Accord and Satisfaction)

23.    Plaintiff and Defendant entered into an accord and full satisfaction and discharge of the obligation alleged in the Complaint.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

### (Part Performance as Satisfaction)

24.    If a valid and enforceable contract is found to exist, which Defendant denies, Defendant tendered to Plaintiff, in full satisfaction of its obligations, part performance of the contract, which offer was accepted by Plaintiffs in full satisfaction of the agreement.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

### (Contract Unenforceable)

25.    If a valid and enforceable contract is found to exist, which Defendant denies, the contract alleged in Plaintiff's Complaint contains no valid or enforceable obligation by Defendant.

DEFENDANT BFI WASTE SYSTEMS OF NORTH
AMERICA, INC.'S ANSWER TO COMPLAINT                     8

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

### (Lack of Consideration)

26.     If a valid and enforceable contract is found to exist, which Defendant denies, the contract alleged in Plaintiff's Complaint contains no valid or enforceable obligation by Defendant to Plaintiff because it was executed without any consideration whatsoever.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

### (Contrary to Public Policy)

27.     If a valid and enforceable contract is found to exist, which Defendant denies, the contract alleged in Plaintiff's Complaint contains no valid or enforceable obligation by Defendant to Plaintiff because it is contrary to public policy.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

### (Unconscionability)

28.     If a valid and enforceable contract is found to exist, which Defendant denies, certain provisions of the contract between the parties would be unconscionable and unenforceable if interpreted and enforced as Plaintiff urges.  Accordingly, such provisions do not constitute grounds for Plaintiff's purported cause of action for breach of contract.

## TWENTY-NINTH AFFIRMATIVE DEFENSE

### (Modification)

29.     If a valid and enforceable contract is found to exist, which Defendant denies, Plaintiffs and Defendant agreed to modify the contract alleged in the Complaint.  Such modification relieved Defendant of performing the obligations Defendant is alleged to have breached.

## THIRTIETH AFFIRMATIVE DEFENSE

### (Novation)

30.     If a valid and enforceable contract is found to exist, which Defendant denies, through conduct and/or express agreement, and by Defendant's reliance on such conduct and/or agreement, the parties have modified the terms of their alleged contract. These modifications have relieved Defendant of the purported obligations which Plaintiff alleges Defendant has failed to perform.

THIRTY-FIRST AFFIRMATIVE DEFENSE

(Payment of Obligation)

31.     The obligation set forth in the Complaint was fully discharged by Defendant's payment to Plaintiff, which was the full amount due and was accepted by Plaintiff in full payment of the obligation.

THIRTY-SECOND AFFIRMATIVE DEFENSE

(Prevention of Performance)

32.     If a valid and enforceable contract is found to exist, which Defendant denies, Defendant was and is ready, willing, and able to perform any and all conditions of the alleged contract, but Plaintiff has prevented and continue to prevent Defendant's performance.

THIRTY-THIRD AFFIRMATIVE DEFENSE

(No Recovery of Attorneys Fees)

33.     Plaintiff has failed to state claims upon which attorneys fees may be awarded.

THIRTY-FOURTH AFFIRMATIVE DEFENSE

(Exoneration)

34.     Defendant is informed and believes and on that basis alleges, that Plaintiff failed to disclose material facts in making and pursuing its claims and has engaged in conduct that has materially impaired the rights of Defendant.  Defendant's obligations to Plaintiff, if any, have therefore been exonerated.

THIRTY-FIFTH AFFIRMATIVE DEFENSE

(Plaintiffs' Fraud)

35.     If a valid and enforceable contract is found to exist, which Defendant denies, Plaintiff's claims of breach of the alleged contracts are barred by Plaintiff's fraud.

THIRTY-SIXTH AFFIRMATIVE DEFENSE

(Mistake)

36.     If a valid and enforceable contract is found to exist, which Defendant denies, Plaintiff's claims of breach of the alleged contract are barred by mistake.

## THIRTY-SEVENTH AFFIRMATIVE DEFENSE

### (Force Majeure)

37.    If a valid and enforceable contract is found to exist, which Defendant denies, to the extent that Defendant is found to have been in default with respect to any obligation of any contract alleged, such default is not the responsibility of Defendant but is the result of acts or omissions of others or of force majeure.

## THIRTY-EIGHTH AFFIRMATIVE DEFENSE

### (Corporations Code section 313)

38.    Any contractual commitment alleged in the Complaint was not signed by corporate officers of Defendant with due authority to execute the same, and the Defendant cannot be charged with any such contractual obligations as they have not been executed by the requisite empowered corporate officers.

## THIRTY-NINTH AFFIRMATIVE DEFENSE

### (Reservation of Rights)

39.    Defendant's stating of specific affirmative defenses in this answer is not conclusive and is made with a full reservation of rights to amend this answer to plead additional affirmative defenses as appropriate based on facts discovered formally or informally during the prosecution and defense of this action.

DATED: May 23, 2005

LAW OFFICES OF THOMAS M. BRUEN
A Professional Corporation


By:    Thomas M. Bruen
       Thomas M. Bruen

Attorneys for Defendant
BFI WASTE SYSTEMS OF NORTH
AMERICA, INC.

* * * * * *

1

### DEMAND FOR JURY TRIAL

2        Defendant hereby demands a jury trial of all issues triable of right by a jury.

3   DATED: May 23, 2005                    LAW OFFICES OF THOMAS M. BRUEN
                                           A Professional Corporation
4

5

6        By: _Thomas M. Bruen_
                                              Thomas M. Bruen
7

8        Attorneys for Defendant
         BFI WASTE SYSTEMS OF NORTH
         AMERICA, INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28