1  THOMAS M. BRUEN (SB# 63324)
   ERIK A. REINERTSON (SB# 218031)
2  LAW OFFICES OF THOMAS M. BRUEN
   A Professional Corporation
3  1990 N. California Boulevard, Suite 940
   Walnut Creek, CA 94596
4  Telephone: (925) 295-3131

5  Attorneys for Defendant
   BFI WASTE SYSTEMS OF NORTH
6  AMERICA, INC.

7

8                  UNITED STATES DISTRICT COURT

9                 EASTERN DISTRICT OF CALIFORNIA

10

11  ATLAS DISPOSAL INDUSTRIES, LLC          )   Case No.  05CV989 MCE KJM
                                            )
12              Plaintiff,                  )   DEFENDANT'S OPPOSITION TO
                                            )   PLAINTIFF'S RULE 56 MOTION FOR
13  v.                                      )   PARTIAL SUMMARY JUDGMENT
                                            )
14  BFI WASTE SYSTEMS OF NORTH              )   Date:        June 19, 2006
    AMERICA, INC.,                          )   Time:        9:00 A.m.
15                                          )   Courtroom:   3
                Defendant.                  )   Judge:       Hon. Morrison C. England, Jr.
16  _____)   Trial Date:  January 7, 2007

17

18

19

20

21

22

23

24

25

26

27

28

1
TABLE OF CONTENTS

2                                                                                              <u>Page</u>

3
I.      INTRODUCTION ........................................................ 1
4
II.     STATEMENT OF FACTS ................................................. 1
5
III.    ANALYSIS ............................................................ 6
6
        A.      Standard for Summary Judgment ...................................... 6
7
        B.      Essential Elements of Collateral Estoppel ............................... 7
8
        C.      There is a Genuine Issue of Material Fact as to Essential Elements of Plaintiff's
9               Claim for Collateral Estoppel ....................................... 8

10              1.      The Issues Plaintiff Seeks to Preclude Are Not Identical to the Issues
                        in the Preceding Action. ..................................... 10
11
                        a.      *Issue 1:  Preclusion of Whether the DSA is an Enforceable*
12                              *Agreement.* ........................................... 10

13                      b.      *Issue 2: Preclusion of BFI's Duties Under the DSA.* ........... 11

14                      c.      *Issue 3: Preclusion of Tipping Fee Issue.* ................... 12

15                      d.      *Issues 4 & 5: Preclusion of the Calculation of Damages Issues.* .. 13

16              2.      The Issues Plaintiff Seeks Collaterally Estoppel on Were Never Litigated,
                        and Were Not Necessary to the Decision in the Initial Action. .......... 16
17
                3.      Public Policy Does Not Support the Application of Collateral Estoppel. .. 16
18
IV.     CONCLUSION. ........................................................ 17
19
20

21

22

23

24

25

26

27

28

TABLE OF AUTHORITIES

Page

CASES

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-50, 106 S.Ct. 2505, 2511 (1996) . . . . . . . . . .  7

*Bleeck v. State Board of Optometry,* 18 Cal.App.3d 415, 429 (1971) . . . . . . . . . . . . . . . . . . . . . . .  10

*Bugna v. McArthur (In re Bugna),* 28 U.S.C. § 1738; 33 F.3d 1054, 1057 (9th Cir. 1994) . . . . . . .  7

*Commissioner v. Sunnen,* 333 U.S. 591, 601-603, 68 S.Ct. 715 (1948) . . . . . . . . . . . . . . . . . . . .  13

*Eastman Kodak Co. v. Image Technical Services, Inc.,* 504 US 451, 456,
112 S.Ct. 2072, 2077 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

*Filet Menu, Inc. v. C.C.L. & G., Inc.,* 79 Cal.App.4th 852, 860 (2000) . . . . . . . . . . . . . . . . . . . . .  9

*Flores v. Transamerica HomeFirst, Inc.,* 93 Cal.App.4th 846, 852 (2001) . . . . . . . . . . . . . . . . .  13

*Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

*Foothills Townhome Assn. v. Christiansen,* 65 Cal.App.4th 688 (1998) . . . . . . . . . . . . . . . . . . . .  14

*Garrett v. City and County of San Francisco,* 818 F.2d 1515, 1520 (9th Cir. 1987) . . . . . . . . . . .  7

*Haveco of America, Ltd v. Freeman Atkins & Coleman, Ltd.,* 58 F.3d at 303, 306
(7th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

*Lucido v. Sup. Ct.,* 51 Cal.3d 335, 341 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10, 16

*Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc.,* 182 F.3d 157, 160 (2d Cir. 1999) . . . . . .  7

*People v. Sims,* 32 Cal.3d 468, 484 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

*San Paolo U.S. Holding Co., Inc. v. St. Paul Fire & Marine Ins. Co.,* 211 F.3d 1274
(9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

*Sandoval v. Sup. Ct.,* 140 Cal.App.3d 932, 941 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

*Wimsatt v. Beverly Hills Weight Loss Clinic Intern., Inc.,* 32 Cal.App.4th 1511, 1517 (1995) . . .  10

STATUTES

Federal Rule of Civil Procedure 56(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

OTHER

6 Jaeger, Williston on Contracts (3d ed.1962) § 860, p. 252 (Williston) . . . . . . . . . . . . . . . . . .  9, 16

Corbin on Contracts, Vol. 5, Section 992, p. 6 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

Schwarzer et al., Cal Practice Guide: Federal Civil Procedure Before Trial (The Rutter Group 2006) ¶ 14:33. p. 14-10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

1   I.      **INTRODUCTION**

2          Plaintiff Atlas Disposal Industries, LLC's motion for partial summary judgment seeks to bar

3   discovery into, and litigation of, facts unfavorable to Plaintiff.  These facts would prove that

4   Defendant Browning Ferris Industries of North America, Inc. ("BFI") did not breach the Disposal

5   Services Agreement ("DSA") during its second and third years.  Likewise, Plaintiff seeks to hide

6   evidence that during the second and third contract years, the DSA was a money losing contract for

7   Plaintiff, the alleged breach of which results in no damage.  BFI's opposition to the motion will

8   show that none of the issues that Plaintiff seeks collateral estoppel on are identical to the issues

9   litigated in the first action between these parties. None of the issues that Plaintiff seeks collateral

10  estoppel on were actually litigated in that action.  And none of the issues  that Plaintiff seeks

11  collateral estoppel on were necessary to the decision in the initial action.  Therefore, BFI has a right

12  to conduct discovery and present evidence on these issues in the present action.

13  II.     **STATEMENT OF FACTS**

14          In *Atlas Disposal Industries v. BFI Waste Systems of North America, Inc*, Sacramento

15  Superior Court Case No.  00AS03373 (the "Initial Action"), Plaintiff sued BFI Waste Systems of

16  North America Inc.  ("BFI") for damages for breach of an annual material delivery commitment for

17  the first year of a three year contract. The essential terms of the contract were that BFI would deliver

18  a minimum of 26,000 tons and a maximum of 65,000 tons of commingled  recyclable materials to

19  Plaintiff's processing facility per year, where the material was run across a mechanized conveyor belt

20  and sorting line. (Declaration of David Sikich ("Sikich Decl."), Exh. A, §§ 1 & 5(a).)  Recyclable

21  materials were to be sorted and recovered by Atlas, with the residue going to a landfill.  Plaintiff was

22  to sell those recovered materials for which it could find markets.  Plaintiff was to recycle 80% of the

23  materials it received from BFI.  (Sikich Decl., Exh. A, § 13(b).)

24          In the Initial Action, Plaintiff elected to treat BFI's obligations to Plaintiff under the first year

25  of the contract as severable from BFI's obligations under the second and third years, and explicitly

26  declined in the Initial Action to litigate any contract issues for years two and three of the contract.

27  (Bruen Decl., ¶ 2, p. 1:25-2:12.)

28          Plaintiff obtained a judgment against BFI for damages for breach of the annual tonnage

DEFENDANT'S OPPOSITION TO PLAINTIFF'S
RULE 56 MOTION FOR SUMMARY JUDGMENT          1

1   commitment for the first year of the contract only.  (BFI's Opposition to Plaintiff's Statement of

2   Undisputed Facts ("SUF"), No. 8.)  In ruling in favor of Plaintiff, the state court made findings on

3   liability and damages that were heavily dependent on the facts regarding Plaintiff's and BFI's

4   performance of the contract in the first year. The state court judgment contained a number of factual

5   determinations based on the conflicting evidence presented by the parties regarding the first year of

6   the contract.  The state court did not hear evidence or make any findings regarding years two or three

7   of the contract. The state court determined the following issues:

8        1.      The DSA was a valid contract. BFI asserted in the first trial that the DSA was an

9   unenforceable contract, i.e., was never a binding agreement, because the parties failed to reach an

10  agreement as to all material terms. The DSA stated that BFI was to pay Plaintiff $32.50 for every ton

11  of recyclable materials it delivered to Plaintiff, except that rates for certain types of material to be

12  listed on Exhibit A to the DSA would be charged at the rate specified by Exhibit A. Exhibit A was

13  never attached or agreed to, leading to BFI's argument in the Initial Action that the DSA was fatally

14  uncertain. The state court disagreed, holding that the lack of Exhibit A merely meant that there were

15  no exceptions to the $32.50 tipping fee, and that the parties later came to an understanding by usage

16  and custom in the first year as to the proper rates for certain material that was supposed to be

17  described in Exhibit A. (See Plaintiff's Request for Judicial Notice ("RJN") Exh. D, at p. 5:7-12.)

18  The state court held that the evidence showed that through custom and usage the parties agreed on a

19  rate of $0.00 for clean wood and $15.00 for green waste. BFI made no other substantiative

20  arguments for why the contract was not a binding agreement. (*Ibid.*)

21       2.      The DSA's plain language stated that BFI had an obligation to deliver 26,000 tons per

22  annum, and during the first year, the state court found that BFI breached that obligation by only

23  delivering 16,271 tons of material. (Sikich Decl., Exh A, § 5(a).)  BFI argued that Plaintiff's breach

24  of the DSA excused BFI from performance. BFI argued that during the first year, Plaintiff

25  unilaterally changed prices, wrongfully rejected loads and occasionally closed down the plant. The

26  state court found that "the evidence fails to show that plaintiff was successful in any attempt it might

27  have made to unilaterally impose higher prices."  (RJN, Exh D, at p. 14:13-15.) It also found that the

28  evidence that BFI relied on for its argument that the Plaintiff wrongfully rejected loads was

1    "anecdotal and circumstantial," (*id.* at p. 17:6-14,) and that evidence that Plaintiff's facility was

2    closed for lengthy periods was speculative and lacked personal knowledge, nor did it keep BFI from

3    performing its obligations. (*Id.*, at p. 18:1-10.)  All of these determinations only examined evidence

4    concerning the first year of the contract. Therefore the state court found that BFI's duty to perform

5    was not excused by Plaintiff's breach during the first year.  BFI did not present, nor did the state

6    court evaluate any evidence regarding Plaintiff's non-performance of the second or third years of the

7    DSA.

8         3.    Regarding damages:

9         •    Plaintiff sought damages equal to the missing tons times the tipping fee of $32.50.

10   BFI argued that the missing tons should be reduced by the amount of tons wrongfully rejected by

11   Plaintiff during the first year, that the tipping fee should have been reduced to reflect the average

12   tipping fee paid on the tons that were delivered during the first year of the DSA (which included the

13   lower tipping fees for clean wood and green waste), and that total damages should be reduced by the

14   amount that it would have cost Plaintiff to recycle or dispose of BFI's material.  (RJN, Exh G, at p.

15   14.)

16        •    Plaintiff sought additional damages for the lost profits that it would have received

17   from the sale of recyclable material produced from the missing tonnage, and increased disposal costs

18   of non-conforming loads, and the lost commodity revenue from the excess disposal tonnage. (SUF

19   No. 7.)

20        •    The state court held that BFI failed to present evidence sufficient to prove that any of

21   the loads were wrongfully rejected, and therefore, BFI was not entitled to an offset during the first

22   year of the DSA. (SUF No. 9(7).)  The court also held that the amounts of clean wood and green

23   waste that were being delivered to the facility at the end of the first year dropped to 2%, and

24   therefore all waste that would have been delivered would have been charged the $32.50 tipping fee.

25   (RJN, Exh. D, at pp. 20:20-21:18.)

26        •    The state court also held that Plaintiff was not entitled to lost commodity revenue, nor

27   excess disposal costs, nor lost commodity revenue on the excess disposal tonnage, because these

28   damages were fatally uncertain, especially because Plaintiff was a new venture.  (SUF No. 9(8).)

1      •      The state court did not address BFI's contention that the damages should have been

2 lowered by the amount that Plaintiff would have incurred processing the missing tonnage. On appeal,

3 the appellate court, noting that all presumptions favor the trial court's ruling, held that the burden of

4 proving the processing costs offset was on BFI, and that BFI failed to meet its evidentiary burden to

5 prove the expenses Plaintiff would have incurred had BFI delivered the missing tonnage during the

6 first year. (RJN, Exh. G, at pp. 14-17.) Read fairly, the appellate court decision implies that these

7 expenses incurred in processing the material and the alleged lost commodity revenue that Plaintiff

8 suffered may have washed each other out during the first year.

9      The state court judgment in the Initial Action was entered on September 5, 2002, and it was

10 affirmed by the Court of Appeal on August 5, 2004. (SUF Nos. 8, 11.) The Court of Appeal

11 sustained the trial court's findings on damages on the basis that they were factual findings which lay

12 within the exclusive province of the trial court. (RJN, Exh G, at p. 16.)

13      After Plaintiff filed the present action, BFI propounded discovery on, *inter alia*, whether the

14 parties agreed for the second and third years of the contract to a price for materials that were to be

15 listed on Exhibit A to the DSA, and on Plaintiff's expected revenues, Plaintiff's cost of performance

16 of the DSA, and Plaintiff's ability to perform the DSA for the second and third years of the contract.

17 (SUF Nos. 40, 41.) Plaintiff refused to answer these discovery requests, asserting that the state court

18 had already determined these issues. (*Ibid.*) Counsel for the parties have since agreed that Plaintiff

19 will answer BFI's discovery if it is determined that the issues addressed in BFI's discovery requests

20 are not subject to collateral estoppel. (SUF No. 42.)

21      The facts regarding Plaintiff's ability to perform its duties under the DSA and its potential

22 damage claim for the second and third years are radically different from the facts relating to the first

23 year of the DSA that were presented in the Initial Action. A brief introduction to facts concerning

24 the second and third contract years, some of which have been discovered by BFI from third parties,

25 provides an explanation as to why Plaintiff seeks to exclude these facts from discovery and

26 litigation:

27      To begin with, Plaintiff's facility closed for almost three months (July 12 to October 11,

28 2000) during the second year of the contract without any advanced notice to BFI or any of its other

1   customers. (SUF Nos. 43, 48.)  After the facility reopened (but with a much lower volume of

2   business from its remaining customers,) Plaintiff operated for another 8 to 10 months and then

3   closed its facility permanently in the summer of 2001 – only five months into the third year of the

4   contract. (SUF No. 50.)  The initial reason for the closure of Plaintiff's facility in year two was a

5   fire, which caused extensive damage to Plaintiff's sorting facility. (SUF No. 43.)  Plaintiff had

6   installed its sorting equipment without permits or approvals and without an adequate fire sprinkler

7   system. (SUF No. 44.)  Plaintiff had been on notice before the fire that its facility was out of

8   compliance with applicable building and fire codes.  The need to obtain the permits and the

9   installation of adequate fire safety systems caused the closure to extend to mid-October, 2000.  (SUF

10   Nos. 46, 48.)  Plaintiff later voluntarily it closed the facility early in the third year of the DSA for two

11   reasons:  the falling commodity prices for the recyclable materials Plaintiff recovered at its facility

12   and the loss of its major customers as a result of the fire.  (SUF No. 51.)  Plaintiff's President

13   claimed in other litigation arising from the fire that its former customers may have reasonably

14   concluded that Plaintiff's facility was unreliable. (SUF No. 51.)  Plaintiff's financial statements for

15   the second year of the contract show that Plaintiff operated at a loss during the second contract year,

16   and that its costs of operations exceeded both its tipping fee revenues and the revenues recovered by

17   Plaintiff from selling recovered materials.  (Declaration of Thomas M. Bruen ("Bruen Decl.") filed

18   herewith, Exh. H.)  From Plaintiff's claims in the other litigation, it appears that Plaintiff closed its

19   facility in the third year of the contract because the facility remained unprofitable. (SUF No. 50.)

20       It is perhaps then no wonder that Plaintiff delayed filing suit against BFI for damages for the

21   second and third years of the contract until March 18, 2005-- even though BFI terminated Plaintiff's

22   contract in September of 2000, and Plaintiff permanently closed its sorting facility in the Summer of

23   2001.[1]  (SUF No. 50.)  When BFI requested discovery regarding Plaintiff's non-performance of the

24   contract during years two and three, the financial records of Plaintiff's sorting facility, and its alleged

25   damage claims for years two and three, Plaintiff responded by claiming that BFI should be precluded

26   from discovery on these issues by the doctrine of collateral estoppel. (SUF Nos. 40, 41.)  As

27   Plaintiff apparently sees it, the state court judge has already determined that BFI was obligated to

28

---

[1]BFI has raised the statute of limitations and the doctrine of laches as affirmative defenses.

1  deliver 26,000 tons of recyclable material per year to Plaintiff in the second and third years of the

2  contract (even though the judge said no such thing) and even determined how much money BFI owes

3  Plaintiff for this alleged breach (even though the judge's findings on damages were findings of facts

4  limited to the first contract year).

5          The absurdity of this position is as transparent as Plaintiff's motives. The state court judge

6  never heard evidence on, or decided any of the following issues:

7                  •       whether Plaintiff was able to perform the contract during years two or three;

8                  •       whether Plaintiff's facility was duly permitted and/or licensed in years two

9  and three to perform its obligations under the contract;

10                 •       whether Plaintiff breached the contract in years two or three;

11                 •       whether BFI should be excused from performance of an annual tonnage

12 commitment because of Plaintiff's facility being closed for a substantial portion of year two and

13 most of year three;

14                 •       whether Plaintiff wrongfully rejected BFI's loads in years two or three;

15                 •       whether Plaintiff wrongfully raised prices in years two or three;

16                 •       whether BFI properly terminated the contract during its second year;

17                 •       whether Plaintiff was capable of making any profit from its contract with BFI

18 in years two and three;

19                 •       whether BFI breached the contract in years two and three and, if so, what

20 damages if any Plaintiff incurred.

21         In short, when comparing what the state court actually decided with the issues that are

22 relevant to whether BFI breached the DSA in the second and third year, there is no simply no

23 overlap.  And pursuant to California's law regarding collateral estoppel, unless the issues actually

24 litigated in the first action are identical to the issues in the second action, there is no collateral

25 estoppel.

26 **III.    ANALYSIS**

27         **A.    Standard for Summary Judgment**

28         Federal Rule of Civil Procedure 56 sets forth the procedural requirements for summary

1   judgment. The burden of proof on a motion for summary judgment in diversity actions is likewise

2   governed by federal standards. (*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-50, 106 S.Ct.

3   2505, 2511 (1996) .) The standards and procedures for partial summary judgment are the same as

4   for summary judgment, even though partial summary judgment does not result in a final judgment.

5   (Schwarzer et al., Cal Practice Guide: Federal Civil Procedure Before Trial (The Rutter Group 2006)

6   ¶ 14:33.  p.  14-10.) The party moving for summary judgment has both an initial burden of

7   production and the ultimate burden of persuading the court that there is no genuine issue of material

8   fact that the moving party is entitled to judgment as a matter of law. (FRCP 56(c).)  Because

9   summary judgment is a "drastic device," cutting off a party's right to present its case to a jury, the

10  moving party "bears a heavy burden of demonstrating the absence of any triable issue of material

11  fact." (*Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc.,* 182 F.3d 157, 160 (2d Cir. 1999).)

12  In ruling on a summary judgment motion, all reasonable inferences must be drawn in favor of the

13  non-moving party. (*Eastman Kodak Co.  v.  Image Technical Services, Inc.,* 504 US 451, 456, 112

14  S.Ct.  2072, 2077 (1992).)

15          The moving party has the burden of establishing the applicability of collateral estoppel as to a

16  given issue. (*Haveco of America, Ltd v. Freeman Atkins & Coleman, Ltd.,* 58 F.3d at 303, 306 (7th

17  Cir. 1995).)  "If the movant bears the burden of proof on an issue...," "he must establish beyond

18  peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor."

19  (*Fontenot v.  Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir.  1986) [emphasis in original].) Therefore,

20  for each issue that Plaintiff seeks collateral estoppel on, Plaintiff has to establish beyond controversy

21  every essential element required for partial summary judgment on that issue.

22          Plaintiff cannot meet this burden.

23      **B.    Essential Elements of Collateral Estoppel**

24          "Collateral estoppel bars relitigation of issues actually adjudicated and essential to the

25  judgment in earlier litigation between the same parties." (*Garrett v. City and County of San*

26  *Francisco,* 818 F.2d 1515, 1520 (9th Cir. 1987).)  "In determining the collateral estoppel effect of a

27  state court judgment, federal courts must, as a matter of full faith and credit, apply that state's law of

28  collateral estoppel." (*Bugna v. McArthur (In re Bugna),* 28 U.S.C. § 1738; 33 F.3d 1054, 1057 (9th

1   Cir. 1994).) "Under California law, an earlier court's determination has preclusive effect when (1)

2   the issue is identical to that decided in a former proceeding; (2) the issue was actually litigated and

3   (3) necessarily decided; (4) the doctrine is asserted against a party to the former action or one who

4   was in privity with such a party; and (5) the former decision is final and was made on the merits."[2]

5   (*San Paolo U.S. Holding Co., Inc. v. St. Paul Fire & Marine Ins. Co.*, 211 F.3d 1274 (9th Cir. 2000);

6   *Lucido v. Sup. Ct.*, 51 Cal.3d 335, 341 (1990).)

7           Regarding the motion at hand, in the Initial Action the state court only heard evidence

8   regarding the first year of the contract. Whereas the Initial Action's determinations were based on

9   factual matters peculiar to the parties' performance of the first year of the contract, it is indisputable

10   that the issues that Plaintiff seeks collateral estoppel on were not raised by the pleadings in the Initial

11   Action, were not addressed by evidence presented to the state court, and were not determined by the

12   state court's judgment. Therefore, the first three elements required for collateral estoppel under

13   California law are entirely absent.

14       **C.      There is a Genuine Issue of Material Fact as to Essential Elements of Plaintiff's
                   Claim for Collateral Estoppel**
15

16           Plaintiff suggests that the present action involves issues that are identical to issues

17   previously litigated by the state court in the Initial Action, an action that dealt only with the first year

18   of a three year severable contract. Plaintiff claims these issues are:

19       a)      The DSA dated March 19, 1999 is an enforceable contract.

20       b)      That under the terms of the DSA, BFI was obligated to deliver to Plaintiff a minimum

21               of 26,000 tons of commingled recyclables for each year of the three-year term of the

22               DSA.

23

24   _____

25       [2] Even when the elements stated above are met, the propriety of preclusion depends upon whether the application of collateral estoppel will further the public policies of "preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by

26   vexatious litigation." (*Lucido v. Sup. Ct. supra,* 51 Cal.3d at p. 343.) "Collateral estoppel is an equitable concept based on fundamental principles of fairness. For issue preclusion purposes it means

27   that a party ordinarily may not relitigate an issue that was fully and fairly litigated on a previous occasion. The Restatement explains, however, that because the law of collateral estoppel is essentially

28   equitable in nature there must be some leeway for reexamination of judgments, i.e., there must be some limit to the principle of finality to accord basic fairness to the parties." (*Sandoval v. Sup. Ct.*,140 Cal.App.3d 932, 941 (1983).)

1  c)    BFI agreed to pay Plaintiff a per ton tipping fee for commingled commercial waste

2  d)    The proper "measure of damages" is to multiply the tipping fee by the tonnage
3        shortfall.

4  e)    BFI is not entitled to show that Plaintiff's damages should be reduced by an amount
5        equal to the processing, disposal and operating costs of Plaintiff.

6   But Plaintiff is wrong. These issues were not dealt with in the Initial Action as to years two
7  and three of the contract. The DSA is a severable, or a divisible contract "'under which the whole
8  performance is divided into [three] sets of partial performances, each part of each set being the
9  agreed exchange for a corresponding part of the set of performances to be rendered by the other
10  promisor...'" (*Filet Menu, Inc. v. C.C.L. & G., Inc.*, 79 Cal.App.4th 852, 860 (2000) [quoting 6
11  Jaeger, Williston on Contracts (3d ed.1962) § 860, p. 252 (Williston)].) Here, the performance and
12  corresponding consideration due under the DSA is divided into three distinct time periods, each one
13  year long. During each of the three one year periods, BFI agreed to deliver, and Plaintiff agreed to
14  accept and process a certain amount of commingled recyclables, and Plaintiff agreed that during each
15  separate one year period, Plaintiff would achieve a certain recycling goal.[3] The effect of a "severable
16  contract" "is to give a party who has performed one of these parts the right to its agreed equivalent
17  just as if the parties had made a separate contract with regard to that pair of corresponding parts."
18  (Rest.2d Contracts, § 240).

19   The complaint in the Initial Action only addressed BFI's breach in the first year of the DSA.
20  (RJN, Exh. A.)  It did not contain any allegations regarding the second and third years of the DSA.
21  (*Ibid*.)  There was no evidence admitted, nor argument made, regarding the performance or breach
22  of the second or third years of the contract, which is the subject of the present litigation. The state
23  court's decision did not mention the second or third year the DSA, and nothing in that decision
24  hinged on any facts concerning the second and third year of the DSA. (RJN, Exh. D.)  As such,
25  issues as to whether the DSA is enforceable during the second and third year of the contract, what
26  BFI's obligations were during the second and third year of the contract, and what damages Plaintiff

27

28   [3]It is assumed that Plaintiff does not contest that the DSA is a severable contract, for if it already maintained an action for breach of an indivisible DSA, this present action would be barred by res judicata, which bars litigation of issues that should have been brought in the Initial Action.

1    allegedly suffered during the second and third year of the contract, are clearly not identical to the

2    issues in the Initial Action. These issues were not actually litigated, and were not necessary to the

3    state court's judgment. Plaintiff's moving papers lift the conclusions of the state court's opinion that

4    were based on one set of facts (facts concerning the first year of the DSA), and attempt to apply

5    those conclusions to an entirely new set of facts that have yet to be proven (concerning the later years

6    of the DSA.) Because the factual allegations in the two cases are vastly different, and because the

7    factual issues in the present action were never litigated in the Initial Action, the doctrine of collateral

8    estoppel has no application here, and BFI should be allowed discovery and to present evidence at

9    trial on these issues.

10              **1.    The Issues Plaintiff Seeks to Preclude Are Not Identical to the Issues in
                         the Preceding Action.**

11

12              For collateral estoppel to have effect, the issue in the present action must be identical to the

13    issue decided in the former proceeding. (*Lucido v. Sup. Ct., supra*, 51 Cal.3d 335, 341.) "The

14    'identical issue' requirement addresses whether 'identical factual allegations' are at stake in the two

15    proceedings..." (*Id.*, at 342.) "Where the previous decision rests on a 'different factual and legal

16    foundation' than the issue sought to be adjudicated in the case at bar, collateral estoppel effect

17    should be denied. [Citation]." (*Wimsatt v. Beverly Hills Weight Loss Clinic Intern., Inc.*, 32

18    Cal.App.4th 1511, 1517 (1995).)

19              a.    *Issue 1: Preclusion of Whether the DSA is an Enforceable Agreement.*

20              The first issue that Plaintiff seeks to have precluded is that the former proceeding determined

21    that the contract is enforceable. If by "enforceable," Plaintiff merely means that the DSA had all of

22    the essential elements of a valid contract (i.e., mutual consent, consideration, capacity, proper subject

23    matter, intent) so that either party may enforce the contract in a court of law, BFI is willing to

24    concede that it is estopped from litigating issues concerning whether the DSA had all of the essential

25    elements of a valid contract at the time of formation. BFI argued in the Initial Action that the DSA

26    was not enforceable because an essential term of the contract was left out. At that time, it should

27    have made any other arguments that it had regarding the formation of the contract. (See *Bleeck v.*

28    *State Board of Optometry*, 18 Cal.App.3d 415, 429 (1971).) But this is not to say that as to years

DEFENDANT'S OPPOSITION TO PLAINTIFF'S
RULE 56 MOTION FOR SUMMARY JUDGMENT          10

1   two and three, the DSA has not been modified, novated, released, waived, discharged, terminated,

2   made impossible, made void, voided,  breached, performed, rescinded, or become subject to any of

3   the myriad issues that can effect a party's duties after the contract has been formed.  Plaintiff does

4   not argue, nor does BFI concede, preclusion of issues related to subsequent events that would effect

5   the enforceability of the DSA during its second and third year.

6                           b.      *Issue 2: Preclusion of BFI's Duties Under the DSA.*

7          Plaintiff next wishes to preclude litigation, including discovery, on BFI's alleged duty to

8   deliver 26,000 tons of commingled recyclables to Plaintiff during years two and three of the DSA.

9   Plaintiff's reasoning is that because the state court in the Initial Action merely said that the plain

10  language of the DSA obligated BFI to deliver 26,000 tons of commingled waste during the first year

11  of the contract, BFI allegedly had that same duty during the second and third year of the contract.

12  (RJN, Exh. D, at p. 6:3-18.)

13         In the section of the state court's decision that Plaintiff now cites to as proof that this issue

14  has been disposed of, the state court is merely interpreting the plain language of the contract.

15  Plaintiff totally ignores the state court's analysis of BFI's evidence that *during the first year*, Plaintiff

16  unilaterally changed prices, wrongfully rejected loads and occasionally closed down the plant.  (RJN,

17  Exh. D, at pp. 9:24-18:10.)  BFI argued that these facts excused BFI's performance during the first

18  year of the DSA.  The state court was unconvinced by the evidence that BFI presented to back this

19  argument, and ruled that BFI's performance had not been excused.  (*Ibid.*)  However, the evidence

20  that BFI put forth to prove its excused non-performance consisted exclusively of evidence relating to

21  the first year of the DSA, with no exception.  There was no discussion or determination of facts

22  relating to subsequent events that altered the obligations of either party during the second or third

23  year of the DSA-- facts such as Plaintiff's facility closures.  In short, in the Initial Action, the court

24  evaluated BFI's evidence that it was excused for performing the first year of the DSA.  Now,

25  Plaintiff wishes to forego an evaluation of an entirely new set of evidence concerning an entirely

26  separate issue:  whether BFI's obligations under the DSA have been altered by Plaintiff's non-

27  performance during the second and third year of the contract.  And lest Plaintiff insist that BFI will

28  be "recycling" the same evidence over again, a review of the subjects that BFI seeks discovery on

1 follows.

2         There is ample evidence to show that Plaintiff was not able to perform its end of the bargain

3 during the second and third year of the DSA.  After the July 12, 2000 fire, Plaintiff was unable to

4 reopen in a reasonable amount of time.  (SUF No. 48.)  On August 14, 2000, 33 days after the fire, in

5 an apparent attempt to keep BFI from lawfully terminating the contract[4], Plaintiff informed BFI that

6 it would reopen after 15 to 30 more days.  (Bruen Decl., Exh. D.)  Yet they did not reopen until

7 October 11, 2000, a total of 90 days after the fire.  (SUF No. 48.)  In short, plaintiff was out of

8 business for 25% of the year, but still expects BFI to deliver 100% of its commitment.[5]  Furthermore,

9 in the summer of 2001 (in the first half of year three of the DSA), Plaintiff was losing so much

10 money that it ceased operating altogether.  (SUF No. 50.)  How is BFI expected to deliver 26,000

11 tons a year to a facility that is closed?  Clearly, the state court decision did not address such issues,

12 and therefore BFI cannot be lawfully precluded from discovery and the opportunity to present

13 evidence of these facts in the present action.

14                 c.    *Issue 3: Preclusion of Tipping Fee Issue.*

15         Next, Plaintiff seeks collateral estoppel on the amount of the per ton tipping fee BFI was to

16 pay Plaintiff for the undelivered tons during the second and third year.  Plaintiff's formulation of the

17 state court's decision bears little resemblance to what the state court actually wrote.  The state court

18 made a determination of the appropriate tipping fee based on the factual evidence presented to it

19 regarding the type and amount of waste being delivered to the facility during year one of the DSA.

20 By looking at the state court's discussion of this issue, it is clear that it rests on evidence unique to

21 the first year of the DSA, and is hence a separate issue than the one before this Court:

22         Plaintiff then argues that the damages should be calculated by multiplying the
           missing tons by $32.50 per ton. Plaintiff contends that this is the proper rate because
23         it is the only tipping fee that was actually agreed on by the parties.
                   Based on the testimony of its expert, Everett Harry, defendant contends that
24         the correct tipping fee should be $28.44. Mr. Harry offered this as the proper fee

25         _____

26         [4] The DSA contains a termination clause whereby a party who wishes to terminate following the
         other party's default must give the other party 30 day notice to cure the default. (Sikich Decl., Exh A §
27       11.)

28         [5] After it became clear that Plaintiff's estimates of a reopening date were overly optimistic, BFI,
         siting Plaintiff's inability to perform as required,  terminated the contract in mid September of 2000.
         Plaintiff contests whether this termination is effective. (Bruen Decl., Exh. G.)

1    based on plaintiff's employee Dave Sikich's deposition testimony that this was the
     average amount of the fee paid for the 16271 tons that defendant delivered.
2            The record shows that three agreed fees were in effect during the course of the
     contract. In addition to the $32.50 fee, the parties agreed on a fee of $0.00 for wood
3    and$15.00 for green waste. There is undisputed evidence that the average amount of
     wood and green waste dropped from 29 percent in July and August 1999 to two
4    percent in January 2000. There is no evidence that defendant offered or attempted to
     meet its tonnage commitment by delivering loads that contained wood or green waste.
5    As plaintiff points out, wood and green waste are highly desirable. Defendant was not
     bringing this type of material to plaintiff in the latter part of the contract.
6            The evidence shows that defendant was trying to meet its commitment by
     delivering commingled commercial loads. It is reasonable to infer from the
7    circumstances that the 9729 missing tons would have been delivered in the same
     manner. The only agreed fee that is reasonably applicable to such loads is $32.50.
8    Based on the shortfall amount of 9729 tons at the rate of $32.50 a ton, plaintiff is
     entitled to the principal amount of $316,192.50 for the tip fee shortfall.
9

10   (RJN, Exh. D, p. 20:15-21:18.)

11          It is clear that the above discussion deals with the amount and type of material that was

12   delivered to Plaintiff during 1999 and early 2000 – i.e., the first year of the contract.  Of course, there

13   was no evidence presented to the state court regarding the amount and type of waste delivered to

14   Plaintiff in year two or three, because it was not at issue in that case.  This is another example of the

15   Plaintiff taking a conclusion of the state court which was based on one set of facts, and attempting to

16   apply that conclusion to an entirely different set of facts that have yet to be proven. For instance, if it

17   is determined in the present case that a majority of the recyclables delivered to Plaintiff in year two

18   was clean wood (which had an agreed to rate of $0.00 per ton), following the state court's reasoning

19   above, the tipping fee would be substantially less than the established rate for commingled

20   recyclables that Plaintiff now seeks.  Again, BFI's performance under year two and three of the

21   contract is a separate and distinct issue than its performance under year one of the DSA, and

22   therefore the preclusion of this issue is inappropriate.

23                   d.     Issues 4 & 5: Preclusion of the Calculation of Damages Issues.

24          Plaintiff seeks collateral estoppel on issues relating to the amount of damages Plaintiff

25   allegedly suffered because of BFI's alleged breach of the DSA for the second and third years of the

26   contract, even though this was not an issue in the Initial Action.  While Plaintiff states that it wants

27   collateral estoppel for the "measure of damages" issue (a legal question for which collateral estoppel

28   is not proper (*Commissioner v. Sunnen*, 333 U.S. 591, 601-603, 68 S.Ct. 715 (1948); *Flores v.*

1   *Transamerica HomeFirst, Inc.*, 93 Cal.App.4th 846, 852 (2001))), it really wants estoppel as to the
2   calculation of damages.  Plaintiff's self-serving characterization of what the state and appellate
3   courts held bears little resemblance to the actual opinions as penned by the judges.

4     In determining damages in the Initial Action, the trial court cited section 3300 of the Civil
5   Code, which states that "for the breach of an obligation arising from contract, that measure of
6   damages, except where otherwise expressly provided by this case, is the amount which will
7   compensate the party aggrieved for all the detriment proximately caused thereby , or which , in the
8   ordinary course of things, would be likely to result therefrom."  (RJN, Exh. D., at p. 18:12-14.)  In
9   applying this section, the state court ruled that BFI failed to deliver 9,729 tons in the first contract
10  year, for which BFI had to pay $32.50 per ton for a total of $316,192.  BFI argued that this measure
11  of damages was incorrect in that it ignored the processing costs Plaintiff would have incurred if BFI
12  did deliver the missing tons.  BFI appealed on the basis that this mistake was a violation of Civil
13  Code section 3358, which states that "...no person can recover a greater amount in damages for the
14  breach of an obligation than he could have gained by the full performance thereof of both sides."
15  (RJN, Exh. G, at pp. 12, 14.)

16    The appellate court, in reaching its decision, noted that the amount of damages is a fact
17  question, whereby all presumptions favor the trial court's ruling, which is entitled to great deference.
18  (RJN, Exh. G, at p. 16.)   The appellate court agreed with BFI that the proper measure of damages
19  took into account section 3358, and that processing costs, if they had been proven, should have been
20  deducted from Plaintiff's damages.  (RJN, Exh. G, at p. 14-16.)  But rather than determine that the
21  trial court failed to apply section 3358, the appellate court held that the trial court did apply section
22  3358, but that BFI failed to prove the Plaintiff's processing costs for year one of the DSA, and it was
23  this "evidentiary vacuum" that "rendered untenable BFI's claim for an offset." (*Id.*, at pp. 15-17.)

24    Plaintiff now seeks to extend BFI's "evidentiary vacuum" into years two and three of the
25  DSA by not allowing discovery into what Plaintiff's  processing costs were for these two years. This
26  is not how collateral estoppel works. In *Foothills Townhome Assn. v. Christiansen*, 65 Cal.App.4th
27  688 (1998), Christiansen, in a previous action, won a refund of a special assessment of $1,300 made
28  by his homeowners association in 1993. The homeowners association in 1995 made another special

1   assessment for $1,300 for an identical purpose.  The association sued Christiansen to recover the

2   $1300 and for declaratory relief stating that the 1995 assessment was legal. Christiansen argued that

3   the 1995 assessment was just like the 1993 assessment, and was therefore barred by collateral

4   estoppel. The court of appeal disagreed, holding that the ruling dealing with the 1993 assessment did

5   not invoke issue preclusion as to subsequent action dealing with the 1995 assessment. (*Id.* at p. 692.)

6        Here, Plaintiff is attempting the same thing as Christiansen.  It is trying to take factual

7   matters decided in the litigation surrounding only the first year of the DSA, and applying those

8   conclusions based on those facts to the second and third year of the DSA.  The problem with their

9   attempt is that the appellate court did not rule that the measure of damages is (missing tonnage) x

10  (tipping fee) = damages.[6]  It merely held that BFI failed to carry its factual burden proving an offset in

11  year one of the DSA.  This, obviously, is a separate and distinct issue from whether BFI can carry

12  that factual burden (assuming arguendo that it is indeed BFI's burden) for years two and three of the

13  DSA.

14       And in fact, the evidence obtained by BFI so far suggests that Plaintiff's processing costs in

15  years two and three were so high that if BFI delivered all 52,000 tons under the DSA for years two

16  and three, Plaintiff would have lost even more money.  (SUF No. 52.)  Plaintiff's President, in

17  litigation with a third party unrelated to the DSA, testified that the July 12 fire may have caused

18  many of its customers to conclude Plaintiff was unreliable.  (SUF No. 51.)  Furthermore, in year

19  three of the DSA, Plaintiff's operation shut its doors completely.  (SUF No. 50.)  Plaintiff's

20  President stated in sworn interrogatory answers that Plaintiff's facility closed for two reasons: a loss

21  of customers because of the 2000 facility closure and because recycling commodities prices had

22  dropped so low as to make Plaintiff's business model unprofitable. (*Ibid.*)

23       In short, the DSA was a losing contract for years two and three.  The breach of a losing

24  contract does not result in an award of damages, because any breach thereof would not cause damage

25  to the plaintiff.  (Corbin on Contracts, Vol. 5, Section 992, p. 6 (1964).)  Plaintiff is relying on the

26  fact that BFI failed to make an evidentiary showing that Plaintiff incurred processing costs in the first

27

28

---

[6] In fact, the appellate decision, read fairly, states that [(missing tonnage) x (tipping fee)] - (Plaintiff's processing costs) = damages.

1    year of the trial to preclude discovery into Plaintiff's actual processing costs in the second and third

2    year. But these are clearly two separate issues.

3              **2.       The Issues Plaintiff Seeks Collaterally Estoppel on Were Never Litigated,
                           and Were Not Necessary to the Decision in the Initial Action**.

4

5              The second requirement for the application of collateral estoppel is that the issues were

6    actually litigated in the former proceeding. (*Lucido v. Sup. Ct., supra,* 51 Cal.3d 335, 341.) "An

7    issue is actually litigated '[w]hen [it] is properly raised, by the pleadings or otherwise, and is

8    submitted for determination and is determined." (*People v. Sims*, 32 Cal.3d 468, 484 (1982),

9    [quoting Rest.2d.Judgments, § 27, com. d, p. 255.) As demonstrated above, none of the issues that

10   Plaintiff seeks collateral estoppel on were litigated in the Initial Action. There is no mention of

11   BFI's performance or breach of the second or third year of the DSA in Plaintiff's complaint in the

12   Initial Action. Nor were there allegations surrounding damages Plaintiff suffered in the second or

13   third year of the DSA. No evidence was presented to the Court on these issues in the Initial Action,

14   and the state court's judgment does not make a determination about these issues.

15             Likewise, for collateral estoppel to apply, the issues had to be "necessarily decided." (*Lucido

16   v. Sup. Ct., supra,* 51 Cal.3d 335, 341.) This has been interpreted to mean that the issue was not

17   "entirely unnecessary" to the judgment in the prior proceeding. (*Id.*, at p. 342.) Here, where the

18   Initial Action is expressly limited to the breach of the first year of the DSA, any determination of

19   issues regarding the duties of the parties, breaches and damages occurring in the later years of the

20   DSA would be entirely unnecessary to the judgment in the Initial Action.

21             **3.       Public Policy Does Not Support the Application of Collateral Estoppel.**

22             Courts are to consider the public policy behind the application of issue preclusion, which is

23   to protect the integrity of the court, to serve judicial economy and to protect parties from vexatious

24   litigation. (*Lucido v. Sup. Ct.*, *supra*, 140 Cal.App.3d at p. 941.) In this case, Plaintiff is asking for a

25   windfall before they even have to present any evidence. In the Initial Action, BFI was not given the

26   opportunity to present evidence that effected its duties in the second and third year of the DSA.

27   Likewise, BFI has not been given a chance to conduct discovery on or present evidence regarding

28   Plaintiff's processing costs and the alleged damages suffered by Plaintiff in the second and third year

DEFENDANT'S OPPOSITION TO PLAINTIFF'S
RULE 56 MOTION FOR SUMMARY JUDGMENT              16

1  of the DSA.  To estop BFI from even investigating the cause and effect of Plaintiff's plaint closures

2  for 10 to 12 of the 24 months of the last two years of the DSA is manifestly unfair.  Likewise, the

3  application of issue preclusion here does nothing to serve the public policy of protecting parties from

4  vexatious litigation.  It is the Plaintiff who filed both actions and who now seeks to use collateral

5  estoppel as a weapon, not a shield.

6  **IV.    CONCLUSION.**

7          Plaintiff paints a picture of the state court's decision with such broad strokes that it obscures

8  the obvious conclusion that the state court's determinations are simply inapplicable to the current

9  case at bar.  Plaintiff takes the state court's conclusions relating solely to performance and breach

10  and the resulting damages for the first year of the contract only, and wrongly attempts to bar

11  discovery and litigation of the performance, breach and damages issues for the second and third

12  years of the contract.  This Court should not allow Plaintiff a windfall damage claim without

13  allowing BFI discovery and the ability to present evidence regarding the second and third years of

14  the contract.  Accordingly, the Court should apply collateral estoppel only to the issue of whether the

15  DSA was a valid contract at the time of formation, and deny Plaintiff's motion in all other respects.

16

17  DATED: June 2, 2006.                       LAW OFFICES OF THOMAS M. BRUEN
                                              A Professional Corporation
18

19

20                                            By: _____
                                                   Thomas M. Bruen
21                                            Attorneys for Defendant
                                              BFI WASTE SYSTEMS OF NORTH AMERICA,
22                                            INC.

23

24

25

26

27

28