1  HANSON BRIDGETT MARCUS VLAHOS & RUDY, LLP
   WILLIAM D. TAYLOR (SBN 51689)
2  JAMES T. CAHALAN (SBN 166961)
   RENJU P. JACOB (SBN 242388)
3  980 Ninth Street, Suite 1500
   Sacramento, CA  95814
4  Telephone:     (916) 442-3333
   Facsimile:     (916) 442-2348
5  jcahalan@hansonbridgett.com

6  Attorneys for Plaintiff
   ATLAS DISPOSAL INDUSTRIES, LLC
7

8              **UNITED STATES DISTRICT COURT**

9          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11  ATLAS DISPOSAL INDUSTRIES, LLC,          No. 05CV989 MCE KJM

12              Plaintiff,                    **CONSOLIDATED SEPARATE
                                             STATEMENT OF UNDISPUTED
13      v.                                    MATERIAL FACTS IN SUPPORT OF
                                             PLAINTIFF'S RULE 56 MOTION FOR
14  BFI WASTE SYSTEMS OF NORTH               PARTIAL SUMMARY JUDGMENT**
    AMERICA, INC.,
15
                                             Hearing Date:   June 19, 2006
16              Defendant.                    Time:           9:00 a.m.
                                             Courtroom:      3
17                                            Judge:          Hon. Morrison C. England, Jr.
                                             Trial Date:     January 24, 2007
18

19

20        Plaintiff ATLAS DISPOSAL INDUSTRIES, LLC. ("Plaintiff"), submits the following

21  Consolidated Separate Statement of Undisputed Material Facts ("Consolidated Separate

22  Statement") pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56-260.

23  By reason of these undisputed facts, Plaintiff's entire action, or in the alternative, the following

24  issues, must be adjudicated in Plaintiff's favor as a matter of law.

25      **Note:**  Plaintiff has created this Consolidated Separate Statement for the convenience of

26  the court.  The Consolidated Separate Statement includes (1) Plaintiff's original separate

27  statement of undisputed material facts; (2) Defendant's verbatim responses (including

28  grammatical and typographical errors); (3) Plaintiff's reply and supporting evidence; (4)

                              - 1 -

CONSOLIDATED SEPARATE STATEMENT                                    38540.1

additional material facts of Defendant; and (5) Plaintiff's reply and supporting evidence to the

additional material facts.

## I.   FACTUAL AND PROCEDURAL BACKGROUND FACTS

| PLAINTIFF'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE | PLAINTIFF'S REPLY AND SUPPORTING EVIDENCE |
|---|---|---|
| 1.  Atlas operated a materials recovery facility in Sacramento at which mixed recyclables and waste were sorted and certain recyclable materials were recovered and sold. [Supporting Evidence: Declaration of Dave Sikich in Support of Plaintiff's Rule 56 Motion for Partial Summary Judgment ("Sikich Decl."), ¶ 2, filed concurrently herewith.] | 1.  Disputed.  Plaintiff's facility was closed to receipt of materials from BFI and other customers from July 12 to October 11, 2000 and permanently closed in the summer of 2001 because of falling recyclable materials prices and loss of customers due to the 2000 plant closure. Declaration of Thomas M. Bruen in Support of Defendant's Opposition to Plaintiff Motion for Partial Summary Judgment, served herewith ("Bruen Decl.") at ¶¶ 7, 8 & 9 and exhibits thereto.  (See BFI's Additional Facts No.  49-50 below.) | 1. **Remains undisputed.** BFI's response does not dispute this material fact because it does not deny that Atlas operated a materials recovery facility, and processed and sold recyclable materials.  BFI's contention that the materials recovery facility was closed for certain periods does not dispute this fact. *See*  Plaintiff's Objections to Defendant's Evidence in Opposition to Plaintiff's Rule 56 Motion for Partial Summary Judgment at ¶¶ 8, 9 & 10.  The proferred evidence is inadmissible on the following grounds: relevance (FRE 401, 402), lack of personal knowledge (FRE 602), hearsay (FRE 801), authentication (FRE 901), and the best evidence rule (FRE 1002). |
| 2.  On March 19, 1999, Atlas and BFI entered into a three-year written "Disposal Services Agreement" ("DSA") wherein Atlas agreed to accept from BFI "source separated and commingled recyclables" for processing. [Supporting Evidence:  Sikich Decl., ¶ 3, Exh. A.] | 2.  Undisputed. | 2. **Remains undisputed.** |

CONSOLIDATED SEPARATE STATEMENT

38540.1

**A.     The Initial Action in Sacramento County Superior Court and the Court of Appeal**

      **1.     The Superior Court Proceedings and Judgment**

| PLAINTIFF'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE | PLAINTIFF'S REPLY AND SUPPORTING EVIDENCE |
|---|---|---|
| 3.  In June 2000, Atlas filed suit against BFI in Sacramento County Court alleging, inter alia, that BFI had breached the terms of the DSA during the first year of the contract (the "Initial Action").  [Supporting Evidence: Sikich Decl., ¶ 4. Certified copies of the complaint and answer in the Initial Action are attached as Exhibits A and B to Request for Judicial Notice in Support of Plaintiff's Rule 56 Motion for Partial Summary Judgment ("RJN"), filed concurrently herewith.] | 3.  Undisputed. | 3.  **Remains undisputed.** |
| 4.  In its Complaint, Atlas alleged that the terms of the DSA required BFI to deliver a minimum of 26,000 tons of source separated and commingled recyclables during the each year of the three-year contract.  [Supporting Evidence:  RJN, Exh. A, ¶ 6.] | 4.  Undisputed that that is what Plaintiff's complaint stated.  Disputed as to the inference that the second and third years of the contract were at issue in the Initial Action. | 4. **Remains undisputed.** BFI concedes that Altas alleged this material fact in its complaint.  BFI's interpretation of the plain language of the complaint does not dispute this fact. |
| 5.  Atlas also alleged that BFI had agreed to pay Atlas a $32.50 "tipping fee" per ton of such materials delivered to Atlas in the first year of the DSA. [Supporting Evidence: RJN, Exh. A, ¶ 6.] | 5.  Undisputed. | 5.  **Remains undisputed.** |

CONSOLIDATED SEPARATE STATEMENT

38540.1

| PLAINTIFF'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE | PLAINTIFF'S REPLY AND SUPPORTING EVIDENCE |
|---|---|---|
| 6. Atlas alleged that BFI breached the DSA in the first year of the contract by, inter alia, by failing to deliver the contractual minimum of 26,000 tons of materials. [Supporting Evidence:  RJN, Exh. A, ¶ 12.] | 6. Undisputed. | 6. **Remains undisputed.** |
| 7. Atlas sought to recover two categories of damages under its contract claim: (1) the loss of the $32.50 tipping fee for each ton that BFI's first year deliveries fell short of the contractual minimum of 26,000 tons; and (2) potential profits from resale of recycled commodities that Atlas had lost in the first year, due to BFI's alleged failure to deliver the minimum amount of source separated commingled recyclables.  [Supporting Evidence:  RJN, Exh. A, ¶ 13 and RJN, Exh. A, ¶¶ 16-22, 26.] | 7. Undisputed. | 7. **Remains undisputed.** |
| 8. Following a bench trial in 2001, the Superior Court took the matter under submission. The Court's decision was entered on June 14, 2002. [Supporting Evidence:  RJN, Exhs. C, D.] | 8. Undisputed. | 8. **Remains undisputed.** |
| 9. In its decision, the Superior Court found, inter alia, that:<br><br>(1)  The DSA was a valid, enforceable contract; [Supporting Evidence:  RJN, Exh. D at 5:22-24.]<br><br>(2)  The DSA required BFI to deliver minimum of 26,000 tons per contract year; [Supporting Evidence:  RJN, Exh. D at 6:14-18.]<br><br>(3)  BFI breached the | As to subpart (1), undisputed that at the time of formation, the DSA was a valid, enforceable contract. BFI reserves the right to litigate whether the DSA, after its formation, has been modified, novated, released, waived, discharged, terminated, made impossible, voided,  breached, performed, rescinded, or become subject to any of the myriad issues | 9. **Remains undisputed.**<br><br>Subpart (1) is undisputed because BFI admits that the DSA is valid and enforceable.<br><br>Subpart (2) is undisputed as BFI agrees that the Superior Court found the DSA required BFI to deliver 26,000 tons in each year of the contract. BFI's response concerning a possible defense of excuse of performance does not change |

CONSOLIDATED SEPARATE STATEMENT

38540.1

| PLAINTIFF'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE | PLAINTIFF'S REPLY AND SUPPORTING EVIDENCE |
|---|---|---|
| DSA by failing to meet the minimum tonnage requirement during the first year of the DSA, leaving a 9,729 shortfall in tonnage; [Supporting Evidence: RJN, Exh. D at 10:1-2] | that can effect a party's duties after the contract has been formed. See BFI's Additional Facts Nos. 40-57. | this finding. |
| (4) Atlas did not commit an anticipatory breach of the DSA; [Supporting Evidence: RJN, Exh. D at pp. 12-18.] | As to subpart (2), disputed. The Superior Court found that the plain language in the contract required BFI to deliver 26,000 tons in each year of the contract. The Superior Court also found, after an extensive review of the factual evidence presented by parties, that BFI was not excused from performance by Plaintiff's breach of the DSA, and therefore, BFI was in breach of the contract for not delivering 26,000 tons during the first contract year only. The court did not rule that BFI had a duty to bring recyclables to the Plaintiff in year two or three of the contract. That issue was not before the court. (RJN, Exh. D at p. 12:9-18:10. | Subpart (3) remains undisputed. |
| (5) The parties had agreed to a $32.50 per ton "tipping fee" for commingled commercial loads; [Supporting Evidence: RJN, Exh. D at 21:10-18.] | | Subpart (4) remains undisputed. The Initial Action decided the anticipatory breach issue as to year one and also subsequent years to the extent the issues and facts in subsequent years are identical or similar. |
| (6) Atlas was entitled to recover the "tip fee shortfall" of $316,192.50, calculated based on the tonnage shortfall of 9,729 tons times the $32.50 per ton tipping fee. [Supporting Evidence: RJN, Exh. D at pp. 21:10-18.] | | Subpart (5) remains undisputed. The Initial Action decided the agreed upon tipping fee as to year one. BFI's evidence of Thomas Bruen's declaration and Exhibit H, which constitute profit and loss statements do not dispute the fact that the parties agreed to a $32.50 tipping fee. |
| (7) BFI was not entitled to reduce the amount of the "tipping fee" damages by the amount of tons allegedly "wrongfully rejected by plaintiff," as BFI had failed to meet its burden of providing the number of tons for which it would be entitled to an offset. [Supporting Evidence: RJN, Exh. D at 19:26-20:14.] | As to subpart (3), undisputed.  As to subpart (4), undisputed as to the first year of the contract.  As to subpart (5), undisputed that as to year one of the contract, the superior court ruled as such. Disputed as to $32.50 being the agreed to price for years two or three of the contract, and disputed that the superior court ruled that $32.50 per ton or any other price shall by the price of any missing tonnage for years two and three of the contract. (See generally RJN, Exh. D; Bruen Decl., Exh. H.) | See Plaintiff's Objections to Defendant's Evidence in Opposition to Plaintiff's Rule 56 Motion for Partial Summary Judgment at ¶¶ 11. The proferred evidence is inadmissible on the following grounds: relevance (FRE 401, 402), lack of personal knowledge (FRE 602), hearsay (FRE 801), authentication (FRE 901), and the best evidence rule (FRE 1002). |
| (8) Atlas was not entitled to lost profits it had anticipated from processing and reselling the recycled commodities, because, as a new business, its evidence concerning these anticipated profits was too speculative to meet the legal standard of "reasonable certainty | As to subpart (6), disputed. According to the | Subpart (6) remains undisputed. The Court of Appeals did not find that the tipping fee shortfall damages could be offset by processing costs. In Superior Court, damages were computed by first determining the tipping fee damages (tipping fee multiplied by shortfall in tons). |

CONSOLIDATED SEPARATE STATEMENT

38540.1

| PLAINTIFF'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE | PLAINTIFF'S REPLY AND SUPPORTING EVIDENCE |
|---|---|---|
| necessary to support an award of such damage." [Supporting Evidence: RJN, Exh. D at 21-26.] | Court of Appeals interpretation of the Superior Court's decision, the Superior Court calculated the damages by multiplying the tipping fee times the missing tons, minus processing expenses, but in this case, the amount of expenses for the first year was zero, because BFI failed to prove their existence. BFI now seeks discovery on the existence of processing expenses for the second and third year. (See generally RJN, Exh. G at pp. 14-17.)  As to subpart (7), undisputed as to year one of the contract. The Superior Court did not rule as to whether Atlas properly or improperly rejected loads from BFI for the second and third years of the contract, and did not consider the evidence that Plaintiff's facility was closed for three months during the second contract year and permanently closed early in the third contract year. (See generally RJN, Exh. D.)  As to subpart (8), undisputed as to year one of the contract. | (See RJN, Exh. D 19:17-21:18.) The Superior Court then considered and denied Atlas' commodity revenue damages. In making this calculation, the court considered offsetting Atlas' processing costs from these revenues to determine lost profits. (See RJN, Exh. D 25:1-25:15.) The Court of Appeal recognized this distinction between tipping fee damages and commodity revenue damages. (See RJN, Exh. G at p. 14.) The Court of Appeal similarly applied this rationale by concluding that the processing costs could not offset commodity revenue because of the lack of evidence with regard to lost profits, calling it an "evidentiary vacuum." (See RJN, Exh. G at p. 17.)  Subpart (7) remains undisputed. The Initial Action decided that Atlas properly rejected loads as to year one and to other years to the extent issues and facts are identical or similar to the Initial Action.  Subpart (8) remains undisputed. The Initial Action decided Atlas was not entitled to lost profits as to year one and to other years to the extent issues and facts are identical or similar to the Initial Action. |
| 10.  Atlas was awarded damages of $316,192.50 for lost tipping fees (calculated by multiplying the 9,729 tons in shortfall times the $32.50 tipping fee), plus interest and contractual attorneys' fees. Judgment was entered by the | 10.  Undisputed. | 10.  **Remains undisputed.** |

38540.1

| PLAINTIFF'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE | PLAINTIFF'S REPLY AND SUPPORTING EVIDENCE |
|---|---|---|
| Superior Court on September 4, 2002.  [Supporting Evidence:  RJN, Exh. E.] | | |

### 2.    The Court of Appeal Proceedings and Decision Affirming Judgment in Favor of Atlas

| PLAINTIFF'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE | PLAINTIFF'S REPLY AND SUPPORTING EVIDENCE |
|---|---|---|
| 11.  The Court of Appeal affirmed the trial court's decision in all respects. [Supporting Evidence:  RJN, Exh. G.] | 11.  Undisputed. | 11.  **Remains undisputed.** |
| 12.  The Court considered and rejected BFI's argument that the trial court erred in its calculation of damages:

In a nutshell, BFI argues: "Unquestionably, the $316,192 represents the sum that BFI would have paid Atlas to receive and process 9,729 tons of waste, and does not account for the costs at its [materials recovery facility] -- as the company was contractually obligated to do under the [agreement] to fulfill its 80% diversion guarantee to BFI. Because Atlas' processing costs are not included in this measure of damages, the court's award improperly puts Atlas in a better position than the company would have been in had the parties fully performed the contract.  The Court's failure to subtract Atlas' processing costs from the gross revenues was an error.  See, Civil Code § 3358."  BFI characterizes the court's award as an award of "gross revenues" as opposed to | 12.  Undisputed that the quoted language is accurate.  Disputed that the court rejected BFI' argument that the trial court erred in its calculation of damages, as this was not BFI' contention.  On appeal, BFI contested the measure of damages, which is a legal question, not the factual question of calculation of damages.  BFI asserted that the trial court failed to offset Plaintiff' gross revenues with their operating costs, so that what Plaintiff got was not lost profits, but gross revenue.  The Court of Appeals simply ruled that BFI failed to prove Plaintiff's operating costs for year one of the contract to establish what the Court of Appeal characterized as an "offset." (RJN Exh., G, pp. 14-17.) | 12.  **Remains undisputed.**

BFI's response incorrectly views the Court of Appeals' opinion as allowing BFI to offset tipping fee damages from processing costs.

The Court of Appeals did not find that the tipping fee shortfall damages could be offset by processing costs.  In Superior Court, damages were computed by first determining the tipping fee damages (tipping fee multiplied by shortfall in tons).  (See RJN, Exh. D 19:17-21:18.)  The Superior Court then considered and denied Atlas' commodity revenue damages.  In making this calculation, the court considered offsetting Atlas' processing costs from these revenues to determine lost profits.  (See RJN, Exh. D 25:1-25:15.)  The Court of Appeal recognized this distinction between tipping fee damages and commodity revenue damages.  (See RJN, |

CONSOLIDATED SEPARATE STATEMENT

38540.1

| PLAINTIFF'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE | PLAINTIFF'S REPLY AND SUPPORTING EVIDENCE |
|---|---|---|
| a proper award of "lost profits." | | Exh. G at p. 14.)  The Court of Appeal similarly applied this rationale by concluding that the processing costs could not offset commodity revenue because of the lack of evidence with regard to lost profits, calling it an "evidentiary vacuum." (See RJN, Exh. G at p. 17.) |
| On a superficial level, BFI's argument seems sound and persuasive.  However, BFI overlooks an important aspect of the agreement between the parties.  As the court noted, Atlas intended to make a profit by charging BFI a fee for the use of the facility, the $32.50 per ton tipping fee, and by selling the recovered recycling materials.  To recover the recyclables, Atlas would incur certain processing costs, the costs BFI seeks to offset against the tipping fee damages awarded by the court. [Supporting Evidence:  RJN, Exh. G at 14-15 (italics in original).] | | |
| 13.  In the Court's view, this distinction between the two types of profits available to Atlas under the DSA (tipping fee charges versus profits from processing and reselling recyclables) was significant, and ultimately led to the Court to hold that BFI was not entitled to offset the tipping fee damages by any cost that Atlas would have incurred in processing the materials received: | 13.  Disputed.  The Court of Appeal's logic was that BFI would have been in theory entitled to such an offset, but failed to prove the existence of the Plaintiff's processing costs.  BFI's failure as characterized by the Court of Appeal was an evidentiary issue relating to year one of the contract, not a legal issue. (RJN, Exh. G, [pp. 14-17.) | 13.  **Remains undisputed.**<br><br>The Court of Appeals did not find that the tipping fee shortfall damages could be offset by processing costs.  In Superior Court, damages were computed by first determining the tipping fee damages (tipping fee multiplied by shortfall in tons).  (See RJN, Exh. D 19:17-21:18.)  The Superior Court then considered and denied Atlas' commodity revenue damages. |

CONSOLIDATED SEPARATE STATEMENT

38540.1

| PLAINTIFF'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE | PLAINTIFF'S REPLY AND SUPPORTING EVIDENCE |
|---|---|---|
| | | In making this calculation, the court considered offsetting Atlas' processing costs from these revenues to determine lost profits. (See RJN, Exh. D 25:1-25:15.) The Court of Appeal recognized this distinction between tipping fee damages and commodity revenue damages. (See RJN, Exh. G at p. 14.) The Court of Appeal similarly applied this rationale by concluding that the processing costs could not offset commodity revenue because of the lack of evidence with regard to lost profits, calling it an "evidentiary vacuum." (See RJN, Exh. G at p. 17.) |
| . . . [T]he fact that the amount of damage may not be susceptible of exact proof or may be uncertain, contingent, or difficult to ascertain does not bar recover.  Where a defendant, by willful breach of the contract, has given rise to the difficulty in proving the amount of a claimed loss of profits, it is proper to require only that the plaintiff show the amount of damages with reasonable uncertainty and to resolve uncertainties against the defendant.   [Citation omitted].<br><br>    Here, the court, after considering all the evidence before it, awarded Atlas the tipping fee it would have received had BFI performed under the agreement.  Faced with a lack of evidence as to both the revenues Atlas would have generated on the sale of recyclable commodities and | | |

38540.1

| PLAINTIFF'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE | PLAINTIFF'S REPLY AND SUPPORTING EVIDENCE |
|---|---|---|
| the expenses incurred in producing that revenue, the court declined to award lost profits. The same evidentiary vacuum that deprived the court of a basis for awarding lost profits also renders untenable BFI's claim for an offset. Given the evidence, we find the court's award appropriate under the circumstances of the case. [Supporting Evidence: RJN, Exh. C at 16-17.] | | |

**B.     The Present Action**

    **1.     The Complaint**

| PLAINTIFF'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE | PLAINTIFF'S REPLY AND SUPPORTING EVIDENCE |
|---|---|---|
| 14. On March 18, 2005, Atlas filed suit against BFI in Sacramento County Superior Court, alleging a single count of breach of contract for the second and third years of the DSA (the "Present Action"). [Supporting Evidence: Declaration of James T. Cahalan in Support of Plaintiff's Rule 56 Motion for Partial Summary Judgment ("Cahalan Decl."), ¶ 2, Exh. A.] | 14. Undisputed. | 14. **Remains undisputed.** |
| 15. The damages sought by Atlas in the Present Action are limited to the lost tipping fees, calculated as the shortfall in tonnage delivered by BFI during the second and third years times the tipping fees applicable to the second and third years ($33.48 per ton and $34.48 per ton, respectively, pursuant to the DSA). [Supporting Evidence: | 15. Undisputed that that is what Plaintiff seeks. Disputed as to the amount of the applicable tipping fees and the calculation of damages for years two and three of the contract. For certain types of waste, including but not limited to clean wood and green waste, lower tipping fees apply. It is also disputed as to whether Plaintiff sought | 15. **Remains undisputed.** The damages in the present action are limited as to the lost tipping fees. While lower fees do apply to clean wood and green waste, BFI is collaterally estopped from litigating this matter as it was decided in the Initial Action. (RJN, Exh. D at pp. 21:1-18.) |

CONSOLIDATED SEPARATE STATEMENT

38540.1

| | | |
|---|---|---|
| Cahalan Decl., ¶ 2.] | to unilaterally charge BFI higher prices during years two and three of the contract, excusing BFI's performance. (RJN, Exh. D, p. 5:7-12; Bruen Decl., Exh. H.) | |
| 16.  Under the DSA, the tipping fees are automatically increased 3% in the second and third years of the contract unless [Supporting Evidence: the parties agree otherwise. [Sikich Decl., ¶ 6, Exh. A, § 6(b).] | 16.  Undisputed that that is what the DSA states. Disputed that certain types of recyclables, including, but not limited to, clean wood and green waste were excluded from that contractual provision.  It is also disputed as to whether Plaintiff sought to unilaterally charge BFI higher prices during years two and three of the contract, excusing BFI's performance. (RJN, Exh. D, p. 5:7-12; Bruen Decl., Exh. H.) | 16.  **Remains undisputed.** BFI admits that the DSA provides for the 3% increase. BFI's contention that green waste and wood were excluded from this tipping fee provision does not alter this material fact.  Similarly, BFI's contention that Atlas sought to charge BFI higher prices does not alter the term as provided for in the contract. |

## 2.    The Answer

| PLAINTIFF'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE | PLAINTIFF'S REPLY AND SUPPORTING EVIDENCE |
|---|---|---|
| 17.  In its answer, BFI alleges, inter alia, that: (1) "its execution of the [DSA] was conditioned on the further agreement of the parties that the [DSA] would not be effective until the parties agreed on the terms and prices to be included in Exhibit A to the contract; (2) that the trial court in the initial action "found that Defendant had breached the contract," and ordered BFI to pay damages and attorneys' fees; and that the trial court judgment was affirmed by the Court of Appeal.  [Supporting Evidence:  Cahalan Decl., Exh. B at 2:17-19 and 3:13-15.] | 17.  Undisputed. | 17.  **Remains undisputed.** |

CONSOLIDATED SEPARATE STATEMENT

38540.1

| Plaintiff's Undisputed Material Facts And Supporting Evidence | Defendant's Response And Supporting Evidence | Plaintiff's Reply And Supporting Evidence |
|---|---|---|
| 18. In terms of affirmative defenses, BFI alleges, inter alia, that the DSA: (1) contains no valid or enforceable obligation by BFI; and (2) that BFI "cannot be charged with any contractual obligations as they have not been executed by the requisite empowered corporate officers." [Supporting Evidence: Cahalan Decl., Exh. B at 8:23-26 and 11:7-12.] | 18. Undisputed. | 18. **Remains undisputed.** |
| 19. In responses to discovery, BFI has denied that the DSA constitutes an enforceable contract. [Supporting Evidence: Cahalan Decl., Exh. D at 3:1-5.] | 19. Undisputed. | 19. **Remains undisputed.** |
| 20. BFI further contends that the DSA is unenforceable due to: (1) "lack of consideration"; (2) because it is "contrary to public policy"; (3) because it is "unconscionable." [Supporting Evidence: Cahalan Decl., Exh. B at 9:1-16.] | 20. Undisputed. | 20. **Remains undisputed.** |

## II.   ISSUES IN THE PRESENT ACTION THAT ARE IDENTICAL TO ISSUES THAT WERE ACTUALLY LITIGATED AND NECESSARILY DECIDED IN THE INITIAL ACTION

**A.   The Disposal Services Agreement dated March 19, 1999, constitutes an enforceable contract.**

| Plaintiff's Undisputed Material Facts And Supporting Evidence | Defendant's Response And Supporting Evidence | Plaintiff's Reply And Supporting Evidence |
|---|---|---|
| 21. In the Initial Action, Atlas alleged that Atlas and BFI had entered into the DSA. [Supporting Evidence: RJN, | 21. Undisputed. | 21. **Remains undisputed.** |

| PLAINTIFF'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE | PLAINTIFF'S REPLY AND SUPPORTING EVIDENCE |
|---|---|---|
| Exh. A, ¶ 5.] | | |
| 22.  BFI contended at trial that there was no enforceable contract, because the parties failed to reach a complete agreement on the rates for different products listed on Exhibit A of the DSA. (Supporting Evidence: RJN, Exh. D at 3:6:10; 4:19-22.) | 22.  Undisputed. | 22.  **Remains undisputed.** |
| 23.  The Superior Court thoroughly considered, and rejected, BFI's contentions at trial, finding that the "'DSA 'is an enforceable contract." [Supporting Evidence:  RJN, Exh. D at 3:11-5:24.] | 23.  Undisputed as to year one of the contract. | 23.  **Remains undisputed.** The Initial Action decided that the DSA was an enforceable contract.  BFI has already conceded this point pertaining to formation of the contract. (See UMF 9.1) |

**B.**   **Under the terms of the DSA, BFI was obligated to deliver to Atlas a minimum of 26,000 tons of commingled recyclables for each year of the three-year term of the DSA.**

| PLAINTIFF'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE | PLAINTIFF'S REPLY AND SUPPORTING EVIDENCE |
|---|---|---|
| 24.  In the Initial Action, Atlas alleged that under the terms of the DSA, BFI was obligated to deliver not less than 26,000 tons of recyclable materials during each year of the three-year DSA.  [Supporting Evidence:  RJN, Exh. A, ¶ 6.] | 24.  Undisputed. | 24.  **Remains undisputed.** |
| 25.  In its answer, BFI denied this obligation.  [Supporting Evidence:  RJN, Exh. B, ¶ 5.] | 25.  Undisputed. | 25.  **Remains undisputed.** |
| 26.  The Superior Court agreed with Atlas:  "Under the plain meaning of [DSA, § 5], defendant had an obligation to deliver a minimum of 26,000 tons per annum."  [Supporting Evidence:  RJN, Exh. D at 6:5- | 26.  Undisputed that the quoted material is accurately quoted.  Disputed that Superior Court agrees with Plaintiff's contention that BFI was obligated to deliver 26,000 tons during the second | 26.  **Remains undisputed.** BFI agrees that the quoted material is accurate.  BFI's argument pertaining to defenses to post-contract |

CONSOLIDATED SEPARATE STATEMENT

38540.1

| PLAINTIFF'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE | PLAINTIFF'S REPLY AND SUPPORTING EVIDENCE |
|---|---|---|
| 18.] | and third year of the contract. That issue was not before the Superior Court. The Superior Court interpreted the plain meaning of the contract, but heard no evidence as to any post-contract formation events that subsequently altered any duties owed by BFI. (See generally RJN, Exh. D.) | formation events does not change the Superior Court's finding. BFI is free to litigate any issue that was not decided in the Initial Action. |

**C.     Under the terms of the DSA, BFI agreed to pay Atlas a per ton "tipping fee" for commingled commercial loads.**

| PLAINTIFF'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE | PLAINTIFF'S REPLY AND SUPPORTING EVIDENCE |
|---|---|---|
| 27.  In the Initial Action, Atlas alleged that under the terms of the DSA, BFI agreed to pay Atlas $32.50 per ton delivered. [Supporting Evidence:  RJN, Exh. A, ¶ 6.] | 27.  Undisputed. | **27. Remains undisputed.** |
| 28.  BFI challenged this by asserting the parties had failed to reach complete agreement on the rates for different products on Exhibit A to the DSA, and therefore the DSA was unenforceable. [Supporting Evidence:  RJN, Exh. D at 3:6-4:22.] | 28.  Disputed as incomplete. BFI challenged the enforceability of the contract. It also stated that for the undelivered tons, a lower tipping fee should have been applied because the tipping fee for clean wood ($0.00) and green waste ($15.00), which would have been components of the missing tons, would have lowered the aggregate tipping fee. (RJN Exh. D, at pp. 20:20-21:18.) | **28. Remains undisputed.** BFI's argument that the tipping fee should have been reduced by clean wood and green waste is not responsive because it does not relate to the enforceability of the DSA itself. |
| 29.  The Superior Court found that "Here, the 'DSA' is not silent on the issue of price. At section 6(a), the DSA provides for a rate to be paid by defendant of $32.50 per ton for 'all Recyclable Materials that | 29.  Undisputed. | **29. Remains undisputed.** |

- 14 -

| PLAINTIFF'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE | PLAINTIFF'S REPLY AND SUPPORTING EVIDENCE |
|---|---|---|
| Hauler delivers to Processor . . ..' The rates to be listed in exhibit 'A' are exceptions for specific materials.  The agreed price is applicable." [Supporting Evidence:  RJN, Exh. D at 4:25-5:3.] | | |
| 30.  This conclusion was repeated by the Court later in its decision, when it stated that the "the only agreed fee that is reasonably applicable to [commingled commercial loads] is $32.50.  [Supporting Evidence:  RJN, Exh. D at 21:10-15.] | 30.  Undisputed that the quoted material is accurately quoted.  Disputed as to its inference. The Superior Court's conclusion was based not on the plain language of the contract, but on factual evidence that showed that BFI was bringing in very little clean wood or green waste, and therefore the full $32.50 tipping fee should be applied to the missing tonnage in the first year of the contract. (RJN, Exh. D, p. 20:20-21:18.)  It is also disputed that at the end of year one, Plaintiff notified BFI that Plaintiff was unilaterally increasing its prices for the following materials delivered by BFI and included in the DSA annual tonnage commitment:  commercial recyclable material $44.50/ton; residential recyclable material $44.50/ton; wood $5/ton and greenwaste $25/ton.  Plaintiff reserved the right to periodically adjust the wood and greenwaste prices for "fluctuating commodity prices."  Bruen Decl., Exh. H. | 30.  **Remains undisputed.** BFI's inference concerning the Court's determination of the proper tipping fee does not alter the conclusion itself. Moreover, the evidence that BFI presented of the clean wood and green waste does not change this fact which speaks to the agreed upon fee for commingled commercial loads.  With regard to the alleged increase of prices by Atlas, it does not affect the conclusion reached by the Superior Court. *See*  Plaintiff's Objections to Defendant's Evidence in Opposition to Plaintiff's Rule 56 Motion for Partial Summary Judgment at ¶ 11. The proferred evidence is inadmissible on the following grounds: relevance (FRE 401, 402), lack of personal knowledge (FRE 602), hearsay (FRE 801), authentication (FRE 901), and the best evidence rule (FRE 1002). |
| 31.  It is undisputed that this tipping fee was to increase to $33.48 and $34.48 for the second and third years of the DSA. [Supporting Evidence: Sikich Decl., ¶ 6.] | 31.  Undisputed that the contract calls for a three percent increase from year one to year two, and again from year two to year three for certain types of commingled recyclables. | 31.  **Remains undisputed.** BFI's contention with regard to reduced tipping fees for wood and green waste is true, but because the amounts of wood and green waste |

- 15 -

| PLAINTIFF'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE | PLAINTIFF'S REPLY AND SUPPORTING EVIDENCE |
|---|---|---|
| | Disputed in that there are other tipping fees for certain other kinds of materials, such as, but not limited to clean wood and green waste, which were priced at lower tipping fees. (RJN Exh. D, p. 5:7-12.) It is also disputed that at the end of year one, Plaintiff notified BFI that Plaintiff was unilaterally increasing its prices for the following materials delivered by BFI and included in the DSA annual tonnage commitment: commercial recyclable material $44.50/ton; residential recyclable material $44.50/ton; wood $5/ton and greenwaste $25/ton. Plaintiff reserved the right to periodically adjust the wood and greenwaste prices for "fluctuating commodity prices." Bruen Decl., Exh. H. | provided by BFI were so low, the Court decided in the Initial Action that the $32.50 tipping fee should apply to year one. (RJN Exh. D, p. 21:1-9.) Thus, BFI is estopped from litigating that the tipping fee amount should be reduced by the tons of green waste and wood. With regard to the alleged increase of prices by Atlas, it does not affect this fact of what was agreed upon in the DSA. <br><br> *See* Plaintiff's Objections to Defendant's Evidence in Opposition to Plaintiff's Rule 56 Motion for Partial Summary Judgment at ¶ 11. The proffered evidence is inadmissible on the following grounds: relevance (FRE 401, 402), lack of personal knowledge (FRE 602), hearsay (FRE 801), authentication (FRE 901), and the best evidence rule (FRE 1002). |

**D.    The proper measure of damages for every ton that BFI failed to deliver short of the 26,000 ton annual minimum provided under the terms of the DSA is the amount of the lost "tipping fee" times the shortfall in tonnage delivered.**

| PLAINTIFF'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE | PLAINTIFF'S REPLY AND SUPPORTING EVIDENCE |
|---|---|---|
| 32.  In the Initial Action, Atlas sought damages in the form of the contractual "tipping fee" of $32.50 per ton times the number of tons that BFI failed to deliver short of the 26,000 ton annual minimum. [Supporting Evidence:  RJN, Exh. A, ¶ 13.] | 32.  Undisputed, as to the first year of the contract only. | 32. **Remains undisputed.** |

- 16 -

38540.1

| PLAINTIFF'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE | PLAINTIFF'S REPLY AND SUPPORTING EVIDENCE |
|---|---|---|
| 33. The Superior Court agreed: "Based on the shortfall amount of 9729 tons at the rate of $32.50 a ton, plaintiff is entitled to the principal amount of $316,192.50 for the tip fee shortfall." [Supporting Evidence:  RJN, Exh. D at 21:10-18, Exh. E.] | 33.  Undisputed as to the accuracy of the quoted material pertaining to the first year of the contract only. Disputed that the Superior Court agreed with Plaintiff.  It appears that the Superior Court determined that BFI failed to prove the existence of processing costs that would have off set Plaintiff's gross revenue, not that gross revenue should be the measure of damages, as Plaintiff contends.  (RJN, Exh. G, p. 14-17.) The issue of offsetting costs for years two and three was not before the Superior Court. | 33.  **Remains undisputed.**  The Court of Appeals did not find that the tipping fee shortfall damages could be offset by processing costs.  In Superior Court, damages were computed by first determining the tipping fee damages (tipping fee multiplied by shortfall in tons).  (See RJN, Exh. D 19:17-21:18.)  The Superior Court then considered and denied Atlas' commodity revenue damages. In making this calculation, the court considered offsetting Atlas' processing costs from these revenues to determine lost profits.  (See RJN, Exh. D 25:1-25:15.)  The Court of Appeal recognized this distinction between tipping fee damages and commodity revenue damages.  (See RJN, Exh. G at p. 14.)  The Court of Appeal similarly applied this rationale by concluding that the processing costs could not offset commodity revenue because of the lack of evidence with regard to lost profits, calling it an "evidentiary vacuum." (See RJN, Exh. G at p. 17.) |
| 34.  The Court of Appeal affirmed this award. [Supporting Evidence:  RJN, Exh. G at pp. 13-17.] | 34.  Disputed.  The Court of Appeal affirmed the award, but explained that the damage award was justified because BFI failed to prove offsetting processing costs, not because BFI was not entitled to an offset. (RJN Exh. G, p. 14-17.)  The issue of offsetting costs for years two and three were not before the appellate court. | 34. **Remains undisputed.**  BFI's offset argument does not change the fact that the Court of Appeal affirmed this award.  The Court of Appeals did not find that the tipping fee shortfall damages could be offset by processing costs.  In Superior Court, damages were computed by first determining the tipping fee damages |

CONSOLIDATED SEPARATE STATEMENT

38540.1

| PLAINTIFF'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE | PLAINTIFF'S REPLY AND SUPPORTING EVIDENCE |
|---|---|---|
| | | (tipping fee multiplied by shortfall in tons).  (See RJN, Exh. D 19:17-21:18.)  The Superior Court then considered and denied Atlas' commodity revenue damages.  In making this calculation, the court considered offsetting Atlas' processing costs from these revenues to determine lost profits.  (See RJN, Exh. D 25:1-25:15.)  The Court of Appeal recognized this distinction between tipping fee damages and commodity revenue damages.  (See RJN, Exh. G at p. 14.)  The Court of Appeal similarly applied this rationale by concluding that the processing costs could not offset commodity revenue because of the lack of evidence with regard to lost profits, calling it an "evidentiary vacuum." (See RJN, Exh. G at p. 17.) |

**E.**  **BFI is not entitled to offset from any "tipping fee" damages award any processing and disposal costs that Atlas might have incurred had the shortfall in materials been delivered.**

| PLAINTIFF'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE | PLAINTIFF'S REPLY AND SUPPORTING EVIDENCE |
|---|---|---|
| 35.  As noted by the Court of Appeal, the Superior Court had found that "Atlas intended to make a profit by charging BFI a fee for the use of the facility, the $32.50 per ton tipping fee, and by selling the recovered recycling materials." [Supporting Evidence:  RJN, Exh. G at 14.] | 35.  Undisputed. | 35. **Remains undisputed.** |
| 36.  The Court of Appeal found that BFI had failed to prove that it was entitled to an | 36.  Undisputed.  However, this finding was of a failure in proof that concerned the first | 36. **Remains undisputed.**  The Initial Action found the |

CONSOLIDATED SEPARATE STATEMENT

38540.1

| PLAINTIFF'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | DEFENDANT'S RESPONSE AND SUPPORTING EVIDENCE | PLAINTIFF'S REPLY AND SUPPORTING EVIDENCE |
|---|---|---|
| offset of processing costs against the tipping fee damages. [Supporting Evidence: RJN, Exh. G at 16-17.] | year of the contract only. | Superior Court's award appropriate for the first year of the contract and to other years to the extent that the facts and issues are similar or identical to the Instant Action. |
| 37. The Court concluded the trial court's award was "appropriate under the circumstances of this case." [Supporting Evidence: RJN, Exh. G at 17.] | 37. Undisputed. This finding only concerned the first year of the contract. | 37. **Remains undisputed.** The Initial Action found the Superior Court's award appropriate for the first year of the contract and to other years to the extent that the facts and issues are similar or identical to the Instant Action. |
| 38. The Superior Court afforded both parties a full trial and issued its ruling on the merits on all of the above issues. [Supporting Evidence: RJN, Exhs. C-E.] | 38. Undisputed. | 38. **Remains undisputed.** |

### III.   IT IS UNDISPUTED THAT THE DECISION IN THE FORMER PROCEEDING IS FINAL AND ON THE MERITS

| PLAINTIFF'S UNDISPUTED MATERIAL FACTS | DEFENDANT'S RESPONSE AND EVIDENCE | PLAINTIFF'S REPLY AND SUPPORTING EVIDENCE |
|---|---|---|
| 39.  BFI appealed the ruling of the Superior Court to the Third District Court of Appeals, which affirmed the trial court's ruling in all respects. [Supporting Evidence: RJN, Exh. G.] | 39. Undisputed. | 39. **Remains undisputed.** |

///

///

///

- 19 -

38540.1

## ADDITIONAL MATERIAL FACTS OF DEFENDANT BFI AND SUPPORTING EVIDENCE

**I.     Plaintiff's Request for Collateral Estoppel, if Granted, Would Preclude Discovery and Litigation of the Following Facts Relating to the Second and Third Year of the DSA, Which Were Not at Issue, or Decided by the State Court, in the Initial Action.**

| ADDITIONAL MATERIAL FACTS OF DEFENDANT BFI | SUPPORTING EVIDENCE | PLAINTIFF'S REPLY AND SUPPORTING EVIDENCE |
|---|---|---|
| 40.  Plaintiff has declined to respond to BFI's discovery regarding whether the parties agreed on prices for materials to be listed in Exhibit A to the DSA for years two and three of the contract. | 40.  Declaration of Thomas M. Bruen in Support of BFI's Opposition to Motion for Summary Judgment ("Bruen Decl."), Exh. A; Plaintiff's Responses and Objections to Defendant's Interrogatories (Set One), Interrogatories 4-7. | 40. **Undisputed.**<br>Atlas declined to respond to these interrogatories because they are aimed at obtaining evidence pertaining to the formation of the contract, which BFI is precluded from relitigating. |
| 41.  Plaintiff has declined to respond to BFI's discovery regarding Plaintiff's expected revenues, cost of performance of the DSA, and ability to perform the DSA for years two and three of the contract. | 41.  Bruen Decl., Exh. A; Plaintiff's Responses to Defendant's Interrogatories, Interrogatories 8-43; Plaintiff's Responses and Objections to Defendant's Request for Production of Documents (Set Two); Requests 36-89. | 41. **Undisputed.**<br>Atlas declined to respond to interrogatories 8 to 24 on the grounds that they were aimed at challenging the calculation of damages, which BFI is precluded from litigating in this action.  Atlas declined to respond to interrogatories 24 to 43 because BFI propounded interrogatories in excess of the maximum allowed under Rule 33 (a) of the Federal Rules of Civil Procedure. |
| 42.  Plaintiff and BFI have agreed that Plaintiff will respond to BFI's discovery requests should the Court rule that the issues addressed in Defendant's discovery requests are not subject to collateral estoppel. | 42.  Bruen Decl., para. 5 and Exh. C thereto. | 42. **Disputed.**<br>Atlas agreed it would not object on collateral estoppel grounds to issues the Court deems open for litigation.  It did not waive discovery objections for any other grounds.  (See Bruen Decl., Exh. C.) |
| 43.  On July 12, 2000, Plaintiff experienced a fire at its waste processing facility which required that the facility cease receiving waste materials from | 43.  Bruen Decl., Exh. A, Plaintiff's Responses to Defendant's Interrogatories, Exh. A, Interrogatory No. 14; Bruen Decl., Exh. D; Exh. E | 43. **Disputed.**<br>*See* Plaintiff's Objections to Defendant's Evidence in Opposition to Plaintiff's Rule |

CONSOLIDATED SEPARATE STATEMENT

38540.1

| ADDITIONAL MATERIAL FACTS OF DEFENDANT BFI | SUPPORTING EVIDENCE | PLAINTIFF'S REPLY AND SUPPORTING EVIDENCE |
|---|---|---|
| BFI. | (Sikich deposition in *Atlas Disposal Industries, LLC v. HBG Constructors*, DATED June 12, 2002) at pages 9-10; 53-57, 70-71; and Exh. G. | 56 Motion for Partial Summary Judgment at ¶¶ 7, 8 & 10.  The proferred evidence is inadmissible on the following grounds: relevance (FRE 401, 402) and lack of personal knowledge (FRE 602), hearsay (FRE 801), authentication (FRE 901), and the best evidence rule (FRE 1002). |
| 44.  Prior to the July 12, 2000 fire, and on February 29, 2000, Plaintiff was advised verbally by the Sacramento Fire Department and Building Inspection Department, and in writing by the Fire Department on March 2, 2000, that Plaintiff's materials sorting equipment and fire suppression equipment was installed without permits or approvals. | 44.  Bruen Decl., Exh. E (Sikich deposition in *Atlas v. HBG Constructors*) at pages 17-19, and Exh. 4 thereto. | 44.  **Disputed.**<br><br>*See*  Plaintiff's Objections to Defendant's Evidence in Opposition to Plaintiff's Rule 56 Motion for Partial Summary Judgment at ¶ 8.  The proferred evidence is inadmissible on the following grounds:  relevance (FRE 401, 402) and lack of personal knowledge (FRE 602). |
| 45.  As of June 12, 2000, the Sacramento Fire Dept. ordered Plaintiff to cease its waste processing operations until a number of conditions at its facility were corrected and permits and approvals obtained from the City. | 45.  Bruen Decl., Exh. E (Sikich deposition in *Atlas v. HBG Constructors*) at pages 53-59, and Exhs.7 and 8 thereto. | 45.  **Disputed.**<br><br>*See*  Plaintiff's Objections to Defendant's Evidence in Opposition to Plaintiff's Rule 56 Motion for Partial Summary Judgment at ¶ 8.  The proferred evidence is inadmissible on the following grounds:  relevance (FRE 401, 402) and lack of personal knowledge (FRE 602). |
| 46.  On July 27, 2000, the City of Sacramento recorded a Declaration of Dangerous Building and Notice of Pendency of Action/Proceedings on Plaintiff's waste processing facility property, and ordered Plaintiff to cease processing of | 46.  Bruen Decl., Exh. G. | 46.  **Disputed.**<br><br>*See*  Plaintiff's Objections to Defendant's Evidence in Opposition to Plaintiff's Rule 56 Motion for Partial Summary Judgment at ¶ 10. |

38540.1

| ADDITIONAL MATERIAL FACTS OF DEFENDANT BFI | SUPPORTING EVIDENCE | PLAINTIFF'S REPLY AND SUPPORTING EVIDENCE |
|---|---|---|
| materials immediately. | | The proferred evidence is inadmissible on the following grounds: relevance (FRE 401, 402), lack of personal knowledge (FRE 602), hearsay (FRE 801), authentication (FRE 901), and the best evidence rule (FRE 1002). |
| 47.  As of December 11, 2001, portions of Plaintiff's facility were still in violation of City Codes. | 47.  Bruen Decl., Exh. G. | 47. **Disputed.**<br><br>*See*  Plaintiff's Objections to Defendant's Evidence in Opposition to Plaintiff's Rule 56 Motion for Partial Summary Judgment at ¶ 10. The proferred evidence is inadmissible on the following grounds: relevance (FRE 401, 402), lack of personal knowledge (FRE 602), hearsay (FRE 801), authentication (FRE 901), and the best evidence rule (FRE 1002). |
| 48.  Plaintiff's facility was unable to receive materials from BFI from July 12, 2000 through approximately October 11, 2000. | 48.  Bruen Decl., Exh. A; Plaintiff's Response to Defendant's Interrogatories, Interrogatory No. 24. | 48. **Undisputed.** |
| 49.  As a result of the closure of Plaintiff's facility from July 12, 2000 until approximately October 11, 2000, Plaintiff lost significant volume from all of its customers after Plaintiff reopened its facility. | 49.  Bruen Decl., Exh. E (Sikich deposition in *Atlas v. HBG Constructors*) at pp. 97-99. | 49. **Disputed.**<br><br>*See*  Plaintiff's Objections to Defendant's Evidence in Opposition to Plaintiff's Rule 56 Motion for Partial Summary Judgment at ¶ 8. The proferred evidence is inadmissible on the following grounds: relevance (FRE 401, 402) and lack of personal knowledge. |
| 50. Plaintiff permanently closed its processing facility in June or August of 2001, | 50.  Bruen Decl., Exh. E (Sikich deposition in *Atlas v. HBG Constructors*) at pp. 86- | 50. **Disputed.** |

- 22 -

| ADDITIONAL MATERIAL FACTS OF DEFENDANT BFI | SUPPORTING EVIDENCE | PLAINTIFF'S REPLY AND SUPPORTING EVIDENCE |
|---|---|---|
| because of a loss of volume from Plaintiff's customers and declining prices for the recyclable materials recovered at Plaintiff's facility. | 87, 97-99, 110-112. | *See* Plaintiff's Objections to Defendant's Evidence in Opposition to Plaintiff's Rule 56 Motion for Partial Summary Judgment at ¶ 8. The proferred evidence is inadmissible on the following grounds: relevance (FRE 401, 402) and lack of personal knowledge. |
| 51. Plaintiff's President, David Sikich, stated in verified interrogatory responses in Atlas v. FCI Constructors that: "During the period of time that the facility was closed to recycling operations, numerous customers were turned away who would normally have brought recycling materials to Atlas. This included BFI and Waste Management that contributed a major source of materials to Atlas daily. The volume of tonnage delivered and the number of truckloads of material received from all sources declined markedly during this period. Customers that had normally taken their loads to Atlas could no longer do so and developed other locations for the deliver [sic] of their waste streams. Some would not come back after the facility reopened. It is reasonable to believe that some customers felt Atlas was not a reliable company." | 51. Bruen Decl., Exh. F, Plaintiff's Responses to Special Interrogatories (Set One) in *Atlas Disposal Industries, LLC v. FCI Constructors*, Response to Interrogatory No. 13. | 51. **Disputed.** *See* Plaintiff's Objections to Defendant's Evidence in Opposition to Plaintiff's Rule 56 Motion for Partial Summary Judgment at ¶ 9. The proferred evidence is inadmissible on the following grounds: relevance (FRE 401, 402), lack of personal knowledge (FRE 602), and hearsay. |
| 52. Plaintiff's materials processing operation was unprofitable for the period from April 1, 2000 through March 26, 2001. | 52. Bruen Decl., Exh. H at Bates Nos. A2134-2139. | 52. **Disputed.** *See* Plaintiff's Objections to Defendant's Evidence in Opposition to Plaintiff's Rule 56 Motion for Partial |

- 23 -

38540.1

| ADDITIONAL MATERIAL FACTS OF DEFENDANT BFI | SUPPORTING EVIDENCE | PLAINTIFF'S REPLY AND SUPPORTING EVIDENCE |
|---|---|---|
| | | Summary Judgment at ¶ 11. The proferred evidence is inadmissible on the following grounds: relevance (FRE 401, 402). |
| 53.  Prior to the fire, it cost Plaintiff over $29 a ton to process materials received at Plaintiff's facility. | 53.  Bruen Decl., Exh. E (Sikich deposition in *Atlas v. HBG Constructors*) at pp. 73-74, and Exh. 10, at Bates No. B02107 (referring to an "Operational Cost per ton or $29.19.) | 53. **Disputed.** <br><br> *See*  Plaintiff's Objections to Defendant's Evidence in Opposition to Plaintiff's Rule 56 Motion for Partial Summary Judgment at ¶ 8. The proferred evidence is inadmissible on the following grounds: relevance (FRE 401, 402) and lack of personal knowledge. |
| 54.  Just before the beginning of the second year of the DSA, Plaintiff notified BFI that Plaintiff was unilaterally increasing its prices for the following materials delivered by BFI and included in the DSA annual tonnage commitment:  commercial recyclable material $44.50/ton; residential recyclable material $44.50/ton; wood $5/ton and greenwaste $25/ton.  Plaintiff reserved the right to periodically adjust the wood and greenwaste prices for "fluctuating commodity prices." | 54.  Bruen Decl., Exh. H. | 54. **Disputed.** <br><br> *See*  Plaintiff's Objections to Defendant's Evidence in Opposition to Plaintiff's Rule 56 Motion for Partial Summary Judgment at ¶ 11. The proferred evidence is inadmissible on the following grounds: relevance (FRE 401, 402). |
| 55.  None of the foregoing Additional Material Facts Nos. 43 – 54 were at issue in the Initial Action. | 55.  Bruen Decl., ¶ 2, p. 1:25-2:13. | 55. **Disputed.** <br><br> To the extent facts numbers 43-54 were similar or identical to the issues decided in the initial action, they were at issue. <br><br> Moreover, Thomas Bruen's legal conclusion of these facts |

- 24 -

38540.1

| ADDITIONAL MATERIAL FACTS OF DEFENDANT BFI | SUPPORTING EVIDENCE | PLAINTIFF'S REPLY AND SUPPORTING EVIDENCE |
|---|---|---|
| | | is not evidence.<br><br>*See* Plaintiff's Objections to Defendant's Evidence in Opposition to Plaintiff's Rule 56 Motion for Partial Summary Judgment at ¶¶ 1-4. The proffered evidence is inadmissible on the following grounds: hearsay (FRE 801, 802), lacks foundation, lacks personal knowledge (FRE 602), conclusory, and the best evidence rule (FRE 1002). |
| 56.  None of the foregoing Additional Material Facts Nos. 43-54 were introduced into evidence in the Initial Action. | 56.  Bruen Decl., ¶ 2, p. 1:25-2:13. | 56. **Disputed.**<br><br>To the extent facts numbers 43-54 were similar or identical to evidence introduced in the Initial Action, they were introduced.<br><br>*See* Plaintiff's Objections to Defendant's Evidence in Opposition to Plaintiff's Rule 56 Motion for Partial Summary Judgment at ¶¶ 1-4. The proffered evidence is inadmissible on the following grounds: hearsay (FRE 801, 802), lacks foundation, lacks personal knowledge (FRE 602), conclusory, and the best evidence rule (FRE 1002). |
| 57.  The Superior Court in the Initial Action made no determination as to any of the foregoing Additional Material Facts Nos. 43-54. | 57.  Bruen Decl., ¶ 2, p. 1:25-2:13. | 57. **Disputed.**<br><br>To the extent facts numbers 43-54 were identical or similar to those decided in the Initial Action the Superior Court did make a determination as those facts.  In addition, Thomas Bruen's legal conclusion is not evidence.<br><br>*See* Plaintiff's Objections to Defendant's Evidence in Opposition to Plaintiff's Rule |

CONSOLIDATED SEPARATE STATEMENT

38540.1

| ADDITIONAL MATERIAL FACTS OF DEFENDANT BFI | SUPPORTING EVIDENCE | PLAINTIFF'S REPLY AND SUPPORTING EVIDENCE |
|---|---|---|
| | | 56 Motion for Partial Summary Judgment at ¶¶ 1-4. The proferred evidence is inadmissible on the following grounds: hearsay (FRE 801, 802), lacks foundation, lacks personal knowledge (FRE 602), conclusory, and the best evidence rule (FRE 1002). |

Respectfully submitted,

DATED:  June 9, 2006

Hanson Bridgett Marcus Vlahos & Rudy, LLP

By: _____

JAMES T. CAHALAN
Attorneys for Plaintiff
ATLAS DISPOSAL INDUSTRIES, LLC

- 26 -

38540.1