1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                     EASTERN DISTRICT OF CALIFORNIA

10

11   ATLAS DISPOSAL INDUSTRIES, LLC,
                                        2:05-cv-0989-MCE-KJM
12            Plaintiff,

13       v.                             MEMORANDUM AND ORDER

14   BFI WASTE SYSTEMS OF NORTH
     AMERICA, INC.,
15
              Defendant.
16
                          ----oo0oo----
17

18       Through the present action, Atlas Disposal Industries, LLC

19   ("Atlas") seeks damages from BFI Waste Systems of North America,

20   Inc. ("BFI") resulting from the alleged breach of years two and

21   three of a three year Disposal Service Agreement ("DSA") entered

22   into between the parties in 1999.  Preceding this action, Atlas

23   successfully brought suit against BFI seeking damages for breach

24   of the first year of the DSA.  Given this previous adjudication

25   regarding year one of the DSA, Atlas now moves for partial

26   summary judgment contending certain issues are barred from

27   consideration in this proceeding based on the doctrine of

28   collateral estoppel.

                                  1

For the reasons set forth below, Atlas's motion is granted in part and denied in part.[1]

**BACKGROUND**

BFI hauls residential, commercial, industrial, and construction waste and materials.  Atlas operates a materials recovery facility at which mixed recyclables and waste are sorted and certain recyclable materials are recovered and sold.  On March 19, 1999, Atlas and BFI entered into a DSA requiring BFI to deliver an annual minimum of 26,000 tons of source separated commingled recyclables.  The DSA provided as follows: "[BFI] agrees to provide commingled C&D recyclables (wood, cardboard, metals), source separated wood waste, source separated green waste, and/or other commingled recyclables (including, but not limited to, plastic, fiber, wood, ferrous and non ferrous metal) and/or other recyclable materials (any of foregoing, 'Recyclable Material').  Recyclable Materials shall include the type of materials generated by commercial, industrial, governmental, residential and/or institutional customers."

///
///
///
///
///

---

[1]Because oral argument will not be of material assistance, the Court orders this matter submitted on the briefs.  E.D. Cal. Local Rule 78-230(h).

The DSA specified BFI's obligations as follows: "[BFI] shall deliver to [Atlas] at [Atlas's] Facility, and [Atlas] shall receive from [BFI], 26,000 tons of Recyclable Materials (the 'Minimum Annual Quantity') and not more than 65,000 of Recyclable Materials (the 'Maximum Annual Quantity') during each successive year beginning on the date of the Agreement ('Contract Year')." With respect to price, the DSA provided that: "[BFI] agrees to pay [Atlas] Thirty-Two Dollars and Fifty Cents ($32.50) per ton for all Recyclable Materials that [BFI] delivers to [Atlas], except that rates for particular Recyclable Materials specified on Exhibit 'A', attached hereto, including clean wood waste, green waste, residential and commercial commingled recyclables, and other source separated recyclable materials are as specified on the Exhibit 'A'." The DSA further provided that the $32.50 fee automatically increased three percent (3%) each successive year unless otherwise agreed. Finally, the DSA contained the following Diversion Guarantee: "Through the operation of [Atlas's] facility, [Atlas] shall divert a minimum of eighty percent (80%) of the incoming Recyclable Material delivered to the Facility by [BFI], averaged over each calendar quarter."

In June 2000, Atlas filed suit against BFI in Sacramento Superior Court alleging, *inter alia*, that BFI breached the terms of the DSA during the first year of the Agreement. Specifically, Atlas alleged that BFI was to provide Atlas with a minimum of 26,000 tons of source separated and commingled recyclables and that BFI was to have paid Atlas $32.50 per ton for receipt of those recyclables.

///

3

Atlas sought to recover both a per ton tipping fee of $32.50
("Tipping Fee") for each ton BFI failed to deliver of the 26,000
ton contractual minimum and lost profits for those recyclables
Atlas was unable to process and resell.

Following a bench trial, the Sacramento Superior Court found
BFI had breached the DSA by both failing to deliver the annual
minimum tonnage and failing to deliver source separated
commingled recyclables.  The Court awarded Atlas $316,192.50, the
equivalent of $32.50 for each of the 9,729 tons not delivered.

The trial court specifically found: (1) the DSA was valid;
(2) the DSA required BFI to deliver a minimum of 26,000 tons per
year; (3) during the first year, the parties agreed to a $32.50
per ton Tipping Fee for commingled commercial loads; (4) BFI was
not entitled to reduce the damage award by loads wrongfully
rejected as BFI failed to establish any wrongfully rejected
loads; (5) Atlas was not entitled to lost profits because, as a
new venture, those anticipated profits were too speculative; and
(6) Atlas was entitled to $316,192.50, which represented the lost
Tipping Fees.

Upon entry of final judgment, BFI appealed contending the
trial court erred in awarding Atlas its lost gross revenues as
damages for breach of contract.  The appellate court, after
considering all the evidence before it, affirmed the judgment and
awarded Atlas the Tipping Fees it would have received had BFI
performed under the agreement.

///

///

///

4

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Rule 56 also allows a court to grant summary adjudication on part of a claim or defense. *See* Fed. R. Civ. P. 56(a) ("A party seeking to recover upon a claim ... may ... move ... for a summary judgment in the party's favor upon all or any part thereof."); *see also Allstate Ins. Co. v. Madan*, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995); *France Stone Co., Inc. v. Charter Township of Monroe*, 790 F. Supp. 707, 710 (E.D. Mich. 1992).

The standard that applies to a motion for summary adjudication is the same as that which applies to a motion for summary judgment. *See* Fed. R. Civ. P. 56(a), 56(c); *Mora v. ChemTronics*, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. at 323(quoting Rule 56(c)).

5

1    If the moving party meets its initial responsibility, the
2    burden then shifts to the opposing party to establish that a
3    genuine issue as to any material fact actually does exist.
4    *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,
5    585-87 (1986); *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S.
6    253, 288-89 (1968).

7    In attempting to establish the existence of this factual
8    dispute, the opposing party must tender evidence of specific
9    facts in the form of affidavits, and/or admissible discovery
10   material, in support of its contention that the dispute exists.
11   Fed. R. Civ. P. 56(e).  The opposing party must demonstrate that
12   the fact in contention is material, i.e., a fact that might
13   affect the outcome of the suit under the governing law, and that
14   the dispute is genuine, i.e., the evidence is such that a
15   reasonable jury could return a verdict for the nonmoving party.
16   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 251-52
17   (1986); *Owens v. Local No. 169, Assoc. of Western Pulp and Paper
18   Workers*, 971 F.2d 347, 355 (9th Cir. 1987).

19   Stated another way, "before the evidence is left to the
20   jury, there is a preliminary question for the judge, not whether
21   there is literally no evidence, but whether there is any upon
22   which a jury could properly proceed to find a verdict for the
23   party producing it, upon whom the onus of proof is imposed."
24   *Anderson*, 477 U.S. at 251 (quoting *Improvement Co. v. Munson*, 14
25   Wall. 442, 448, 20 L.Ed. 867 (1872)).
26   ///
27   ///
28   ///

1    As the Supreme Court explained, "[w]hen the moving party has

2    carried its burden under Rule 56(c), its opponent must do more

3    that simply show that there is some metaphysical doubt as to the

4    material facts .... Where the record taken as a whole could not

5    lead a rational trier of fact to find for the nonmoving party,

6    there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at

7    586-87.

8         In resolving a summary judgment motion, the evidence of the

9    opposing party is to be believed, and all reasonable inferences

10   that may be drawn from the facts placed before the court must be

11   drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255.

12   Nevertheless, inferences are not drawn out of the air, and it is

13   the opposing party's obligation to produce a factual predicate

14   from which the inference may be drawn. *Richards v. Nielsen*

15   *Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985),

16   *aff'd*, 810 F.2d 898 (9th Cir. 1987).

17        A summary judgment motion brought pursuant to Fed. R. Civ.

18   P. 56(c) is a proper way to establish issue preclusion. *See*

19   *Takahashi v. Board of Trustees of Livingston Union School*

20   *District*, 783 F. 2d 848, 849 (9th Cir. 1986), *cert. denied* 476

21   U.S. 1182.

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

**ANALYSIS**

Atlas requests the following issues be precluded from litigation in the current action: (1) whether the DSA dated March 19, 1999, constitutes an enforceable contract; (2) whether, under the terms of the DSA, BFI was obligated to deliver to Atlas a minimum of 26,000 tons of commingled recyclables for each year of the three year term of the contract; (3) whether, under the terms of the DSA, BFI agreed to pay Atlas a per ton Tipping Fee for commingled commercial loads; (4) whether the proper measure of damages for any shortage in tons delivered is the Tipping Fee multiplied by that shortfall; and (5) whether any damage award may be offset by those processing and disposal costs saved due to the tonnage shortfall.  Atlas carries the burden of proving with clarity and certainty that the doctrine of collateral estoppel applies. *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1321 (9th Cir. 1992).

The doctrine of collateral estoppel or issue preclusion precludes parties from contesting matters that they have had a full and fair opportunity to litigate, thereby protecting their adversaries from the expense and vexation of multiple lawsuits, conserving judicial resources, and fostering reliance on judicial action by minimizing the possibility of inconsistent decisions. *Montana v. United States*, 440 U.S. 147, 153-154, 99 S. Ct. 970, 59 L. Ed. 2d 210 (1979).

///

///

///

1    Collateral estoppel or issue preclusion provides that when a
2   right, question or fact distinctly put in issue and directly
3   determined by a court of competent jurisdiction cannot be
4   disputed in a subsequent suit between the same parties or their
5   privies. *Southern Pacific R.R. v. United States*, 168 U.S. 1, 48-
6   49, 18 S. Ct. 18, 42 L. Ed. 355 (1897).   In determining the
7   collateral estoppel effect of a state court judgment, federal
8   courts must, as a matter of full faith and credit, apply that
9   state's law of collateral estoppel. *Bugna v. McArther (In re*
10  *Bugna)*, 33 F.3d 1054, 1057 (9th Cir. 1994); *See* 28 U.S.C. § 1738.
11    Under California law, a party seeking to assert issue
12  preclusion must establish the following: (1) the issue sought to
13  be precluded must be identical to that decided in a prior
14  proceeding; (2) the issue must have been actually litigated in
15  the prior proceeding; (3) the issue must have been necessarily
16  decided in the prior proceeding; (4) the decision in the former
17  proceeding must be final and on the merits; and (5) the party
18  against whom issue preclusion is asserted must be the same as or
19  in privity with the party to the prior proceedings. *Lucido v.*
20  *Superior Court*, 51 Cal.3d 335. 341 (1990).   With respect to the
21  foregoing, both parties agree and the Court concurs that the
22  decision in the prior proceeding was final and on the merits.   In
23  addition, the parties to the prior action are the same as the
24  parties in the present action.   Accordingly, the focus of the
25  present inquiry is whether the issues sought to be precluded are
26  identical to those necessarily litigated and decided in the prior
27  action.
28  ///

9

To succeed in the present Motion, Atlas bears the initial burden of demonstrating there exists no genuine issue of material fact. In the event Atlas satisfies its burden, the Court must then consider the public policies underlying the doctrine before concluding that collateral estoppel should be applied in this instance. *Id.* at 342-343.

## I.   Contract Enforceability

It is undisputed that on March 19, 1999, Atlas and BFI entered into a three year severable contract to perform certain obligations regarding the collection and disposal of recyclable waste.[2] It is further undisputed that in the previous action, the trial court found that the DSA was valid and enforceable. As a result of that earlier ruling, Atlas seeks an order from this Court precluding BFI from litigating the enforceability of the DSA.

At first blush it appears that enforceability has necessarily been litigated precluding BFI from revisiting the issue. However, upon further examination, it is clear that while validity has necessarily been decided, enforceability with respect to years two and three has not.

///

---

[2] The DSA is a severable, or divisible contract "'under which the whole performance is divided into [three] sets of partial performances, each part of each set being the agreed exchange of a corresponding part of the set of performances to be rendered by the other promisor...'" (*Filet Menu, Inc. v. C.C.L. & G., Inc.*, 79 Cal.App.4th 852,860 (2000)[quoting 6 Jaeger, Williston on Contracts (3d ed. 1962) § 860, p. 252(Williston)].)

1   Specifically, the issue of whether the DSA is a valid agreement,
2   meaning an agreement that at the time of formation was legally
3   operative in accord with the Parties' intent, has certainly been
4   decided.  In addition, the issue of whether the DSA was
5   enforceable as against both parties during the first year of the
6   DSA was likewise decided.  Conversely, whether BFI remained
7   compelled to adhere to the terms of the DSA during years two and
8   three necessarily entails consideration of the facts and
9   circumstances giving rise to that obligation.  The facts
10  considered by the previous court were limited to the performance
11  of the Parties' obligations during year one.  Whether the
12  obligations of the Parties were later altered rendering the DSA
13  unenforceable during years two and three remains an issue to be
14  decided by the trier of fact in the present proceeding.
15  Consequently, Atlas' Motion to preclude re-litigation of the
16  enforceability of the DSA as to years two and three is denied.
17
18  **II.   Minimum Tonnage Requirement**
19
20      Atlas further seeks to preclude BFI from re-litigating the
21  minimum tonnage requirement for years two and three.  In support
22  of its position, Atlas avers that the previous court found the
23  DSA required BFI to deliver to Atlas a minimum of 26,000 tons of
24  commingled recyclables a year.  BFI does not dispute this fact,
25  however, BFI contends that the prior court in deciding this issue
26  took into consideration evidence regarding BFI's alleged excused
27  non-performance.
28  ///

11

BFI further argues that this issue should not be precluded because its non-performance for years two and three is based on evidence unique to those years and was, therefore, not considered in the previous proceeding.  BFI's argument is misplaced.

The existence of facts excusing BFI's performance speaks to enforceability of this contract term rather than the term's substance.  The previous court determined that the minimum tonnage provision in the DSA was "clear and unambiguous on its face."  Pl's. Request for Judicial Notice, Exh. D, 6:14 ("Exh. D.")  The court further found that "[u]nder the plain meaning of the provision, [BFI] had an obligation to deliver a minimum of 26,000 tons per annum." *Id.* 6:16-18.

BFI does not contend nor does the evidence show that this term was later altered by the Parties.  BFI's sole contention is that the term is unenforceable due to later factual circumstances.  As noted above, enforceability is squarely before this Court.  On the contrary, the existence of the DSA and certain of its terms have necessarily been decided.  Accordingly, Atlas's Motion for Partial Summary Judgment to preclude BFI from re-litigating the minimum tonnage requirement is granted.

**III. Tipping Fee**

Atlas seeks to collaterally estop BFI from litigating whether a per ton Tipping Fee was required under the DSA and, if so, the amount of that fee.  In particular, Atlas argues that the trial court necessarily considered whether a Tipping Fee was required under the DSA and concluded in the affirmative.
///

12

1    BFI essentially concedes the forgoing but again contends that the

2    trial court derived the Tipping Fee solely from evidence unique

3    to the first contractual year.  BFI further asserts that the

4    evidence regarding the Tipping Fee in year two and three is

5    sufficiently distinct from the evidence existing in year one that

6    collateral estoppel on that issue is inappropriate.  The Court

7    agrees.

8         In essence, Atlas argues that because the facts with regard

9    to year one are substantially similar to years two and three, BFI

10   should be precluded from litigating the amount of the Tipping

11   Fee.  While Atlas has provided the Court with a plethora of cases

12   allegedly holding that direct identity of the issues is not

13   required, those cases are inapposite.  The Court concurs that the

14   contract term requiring the payment of a per ton Tipping Fee was

15   necessarily decided in the previous proceeding.  However, the

16   amount of the Tipping Fee rested on a number of facts relevant

17   only to year one of the contract.  In reaching its conclusion,

18   the trial court considered testimonial evidence regarding the

19   amount and composition of the loads delivered to Atlas during the

20   first year.  *Id.* 20:15-21:18.  Those specific facts were used by

21   the trial court to arrive at its conclusion that $32.50 was the

22   correct Tipping Fee.  Since the trial court's conclusion

23   expressly rested on facts specific to year one, that conclusion

24   cannot be extended to years two and three.

25        To the extent Atlas argues that the facts in year one are

26   sufficiently similar to those in years two and three such that

27   issue preclusion should apply, the Court disagrees.

28   ///

                                13

Res judicata or collateral estoppel 'was never intended to operate so as to prevent a re-examination of the same question between the same parties where, in the interval between the first and second actions, the facts have materially changed or new facts have occurred which may have altered the legal rights or relations of the litigants.'" *Evans v. Celotex Corp.*, 194 Cal. App. 3d 741 (1987)(citing *Hurd* v. *Albert*, 214 Cal. 15, 26 (1931)).  Atlas' Motion for Partial Summary Judgment regarding the amount of the Tipping Fee is denied.

**IV.   Measure of Damages**

     Atlas seeks to preclude BFI from re-litigating the previous court's damage determination.  Specifically, Atlas moves to preclude litigation of the following issues: (1) whether the proper measure of damages is the amount of the lost Tipping Fee times the tonnage shortfall; and (2) whether BFI is entitled to offset from any Tipping Fee damage award, Atlas' saved processing and disposal costs.

     In the previous proceeding, the court derived the damage award by multiplying the tonnage shortfall by the Tipping Fee. Atlas seeks to preclude BFI from advancing any alternative calculation in the present action.  In response, BFI asserts damages are to be calculated using the formulations set forth in California Civil Code sections 3300, 3358 as opposed to the foregoing formula.

///

///

1   Additionally, BFI argues the previous Court did consider Atlas'
2   processing cost when it computed the damages, but found that an
3   "evidentiary vacuum" precluded granting the requested diminution
4   of the award.

5       California Civil Code section 3300 provides that "for the
6   breach of an obligation arising from contract, that measure of
7   damages, except where otherwise expressly provided by this case,
8   is the amount which will compensate the party aggrieved for all
9   the detriment proximately caused thereby, or which, in the
10  ordinary course of things, would be likely to result therefrom."
11  In addition, California Civil Code section 3358 clarifies that
12  "except as expressly provided by statute, no person can recover a
13  greater amount in damages for the breach of an obligation, than
14  he could have gained by the full performance thereof on both
15  sides."

16      The applicability of the foregoing California Civil Code
17  provisions to this case has been decided and is properly
18  precluded from re-litigation.  However, damage calculations are
19  necessarily an issue of fact.  Consequently, the application of
20  the California Civil Code damage formulations to the facts
21  existing in years two and three is not subject to issue
22  preclusion.  Similarly, the application of facts existing in
23  years two and three regarding offset are likewise not subject to
24  issue preclusion.  Consequently, Atlas' Motion to estop BFI from
25  litigating any issue regarding calculation of damages is denied.
26  ///
27  ///
28  ///

15

**CONCLUSION**

For the reasons set forth above, Atlas' Motion for Partial Summary Adjudication of contract enforceability, the proper Tipping Fee and the calculation of damages is denied.  Atlas' motion for partial summary judgment of the minimum tonnage requirement is granted.

IT IS SO ORDERED.

DATED: August 25, 2006

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE

16